In re Robert Lyle ZEMAN, Karen Kay Zeman, Debtors.

Thomas T. TARBOX, Trustee and Hawkeye Bank & Trust Company of Humboldt, Plaintiffs,

v.

Milford H. ZEMAN and Frances J. Zeman, Defendants.

Bankruptcy No. 83–03130.
Adv. No. 83–0818F.

United States Bankruptcy Court, N.D. Iowa.

May 16, 1986.

Donald Neiman, Des Moines, Iowa, for plaintiff Hawkeye Bank & Trust 1119.

Thomas Tarbox, Fort Dodge, Iowa, trustee.

Kurt John Stoebe, Humboldt, Iowa, for defendants Milford & Frances Zeman.

## MEMORANDUM OPINION

JAMES E. YACOS, Bankruptcy Judge, Sitting by Designation.

This adversary proceeding was brought to avoid a quitclaim deed given by the debtors on March 25, 1983 releasing back to the defendants, the parents of the debtor Robert Lyle Zeman, all their rights, title

and interest to their farm property which they held and were operating under a contract for sale of the same originally entered into between the defendants and their son and daughter-in-law in December of 1978. The debtors filed their chapter 7 bankruptcy liquidation petition on September 12, 1983.

While the adversary complaint was brought by both the chapter 7 trustee and the Hawkeye Bank, as joint plaintiffs, the avoiding cause of action under the Bankruptcy Code is vested in the trustee alone. As is recognized in the prayer for relief any judgment and recovery would be for the benefit of the bankruptcy estate.

The trustee filed his adversary complaint on October 28, 1983. However, the defendants had already sold the farm property to bonafide purchasers on September 29, 1983, with the exception of a small portion of property upon which the farmhouse was located. Accordingly, the adversary proceeding has been treated by both parties, and was tried, on the basis of a complaint seeking a money judgment for damages by virtue of the original transfer of March 25, 1983 by the quitclaim deed which the trustee alleges is voidable as either a preference under § 547 or a fraudulent transfer under § 548(a)(2) of the Bankruptcy Code. The trustee also made an allegation of "actual intent to hinder, delay, or defraud" under the provisions of § 548(a)(1) of the Code, but I find that there is no substantial evidence in the record to support a finding of actual intent to defraud in this case, particularly in view of the relative lack of financial and business sophistication on the part of both the debtors and the defendants as observed by this court during their testimony from the witness stand.

The central and crucial question for determination in this case accordingly is whether when the defendants received retransfer of all rights pertaining to the farm property on March 25, 1983 by virtue of the quitclaim deed they, the defendants, gave up "reasonably equivalent value in exchange for such transfer" pursuant to § 548(a)(2)(A) of the Code. This standard is also incorporated into the preference section by virtue of the definition of the "new value" for preference purposes under § 547(a)(2) of the Code.

There was a good deal of discussion in the oral argument and briefs submitted by the parties as to questions regarding "transfer" and the exact legal category in which this transaction should be placed. In my mind there is no question whatsoever that the debtors did "transfer" back valuable contract for sale rights which would have been the property of this bankruptcy estate but for the quitclaim deed of March 25, 1983. Pure and simple, they released all equitable and contract rights that they had to the farm property that they had been farming since 1978. For present purposes, the relationship of the parties from the original contract sale in 1978 may be viewed as constituting the debtors as the equitable owners of the property subject to the rights of the defendants as in effect lienholders entitled to payment of the remaining contract price. See *Hatch v. Commerce Insurance Co.*, 216 Iowa 860, 249 N.W. 164 (1933); *Kentzel v. Wheatland Mutual Insurance Ass'n*, 203 N.W.2d 799 (Iowa 1973).

The factual question then resolves down to the simple question as to whether on March 25, 1983 the defendants, when they recovered all interests in the subject farm property, in effect "paid a price" reasonably equivalent in amount to the fair market cash value of the property at that time. The "price" the defendants paid in the present case may properly be viewed in terms of the outstanding contract balance due and owing as of that date. This is so because had the quitclaim transfer not occurred, and the farm property been available for the trustee to liquidate in this bankruptcy proceeding, the defendants would have been entitled to be paid first out of any proceeds of sale by the trustee the amount of their outstanding balance as in substance a "lien" upon the property.

The evidence clearly establishes that as of March 1, 1983 the principal and interest

balance owing the defendants on the contract stood at $313,148.49. The trustee also proved that on March 2, 1983 that balance was reduced $10,000.00 by virtue of a further payment by the debtors to the defendants. The defendants dispute this further reduction in the outstanding debt on the grounds that the transaction of March 2, 1983 was just a "sham" designed to fool bank auditors under which the defendants advanced $10,000.00 to the debtors as a gift and then the debtors immediately gave the defendants another check in the amount of $10,000.00 to show payment on the contract in question.

■ This transaction took place in the office of one of the bank employees with both Milford Zeman and Robert Zeman present, and it is apparent that all parties understood that there would be a more or less simultaneous exchange of checks in this regard. Whether this in fact was a sham designed to deceive auditing officials is not necessary for this court to decide here. The fact *is* established that Milford Zeman gave his son a check for $10,000.00, as a gift, and that Robert Zeman gave his father a separate check for $10,000.00 back as a payment on the farm sale contract. That being the case, this court as a court of equity will leave the parties as it finds them and will not hear of any underlying sham nature of the transaction to the benefit of one of the parties that took part in the same.

The court accordingly finds and concludes that the contract balance outstanding as of March 25, 1983 stood at the amount of $303,148.49. To this must be added outstanding tax obligations assumed and ultimately paid by the defendants in the amounts of $1,273.26, $1,313.00 and $1,313.00. This brings the total consideration in effect "paid" by the defendants to obtain recovery of the farm to a total of $307,047.75. The court has considered the additional items that the defendants argue should be added to that amount but concludes that none of them are justified as additional consideration for present purposes.

The $307,047.75 consideration from the defendants comes down to a "price" of $1,919.00 per acre for the farm property in question. The trustee introduced appraisal testimony and a written appraisal indicating that the market value of this 160-acre farm property in March of 1983 was $2,400.00 per acre, for a total value of $384,000.00. The testimony of this witness, however, together with the written appraisal itself, indicates that this opinion was based upon market values in terms of contract-for-sale prices at interest rates relatively low in comparison to existing interest rates at the time in question. From convincing evidence in the record, I find that a downward adjustment of $250.00 per acre is necessary to convert the market value expressed in terms of contract-for-sale to the more appropriate concept of "cash sale" market value for § 547 and § 548 purposes. Accordingly, the testimony of this witness, and his written appraisal, would indicate a value of $2,150.00 per acre, for a total farm value of $344,000.00.

The defendants introduced evidence of various recent sales of farm property in the area, together with the testimony of a number of local bankers and real estate persons, indicating a range of acreage values from $1,437.00 per acre to $2,064.00 per acre. Considering the particulars of all these sales, and their similarities or dissimilarities to the subject property, together with a downward adjustment of contract sale prices to cash sale value, this evidence would indicate a value of $1,750.00 per acre, for a total farm value of $280,000.00.

The trustee's appraisal witness was a professional appraiser who impressed the court with his training and expertise, but the weight of his opinion must be adjusted somewhat by virtue of his relative unfamiliarity with the local area. It was also brought out on cross-examination that he lacked detailed knowledge as to some aspects of the soil conditions and drainage situation with regard to the subject property. While those factors do not indicate any major discrepancy in value, in my opinion, they do indicate that some downward ad-

justment of his appraisal figure is appropriate.

The appraisal testimony and exhibits offered by the defendants, on the other hand, came from local people more familiar with the local conditions, but that evidence suffers to a considerable degree by virtue of the lack of detailed and direct comparability analysis regarding that evidence. On balance, and considering the entire record in this case, I find and conclude that the cash sale market value of the property in question on March 25, 1983 was $2,050.00 per acre, for a total cash value market value for the farm of $328,000.00.

I have considered the great emphasis the trustee placed upon the fact of the actual resale of some 157 acres of this 160-acre farm property by the defendants in September of 1983. The evidence indicates that those parcels were sold, under contracts for sale at 9 percent interest rates, for a total contract price of $368,950.00. Reducing this contract price by $250.00 per acre to get cash value, the reduction of $40,000.00 would bring the price in that transaction to $328,950.00. To this amount must be added $30,000.00 which the evidence indicates was the value of the 3 acre farmstead property not resold. There is thus some evidence that in September of 1983 the cash sale market value of the property was $368,950.00, or $2,306.00 per acre. However, there is also evidence in the record that the defendants are not at all assured that those contract purchasers will in fact perform and pay the complete contract price. Moreover, the transaction in September of 1983 does not directly indicate value as of March of 1983, in view of the constantly changing farm value situation in the state of Iowa as indicated by the evidence. For these reasons, I do not find that that fact appreciably should modify my conclusions stated above as to the cash sale market value of the property in question as of March 25, 1983.

■ The evidence therefore indicates that property worth $328,000.00 was recovered by the defendants by virtue of the quitclaim deed with consideration of only $307,047.00. I find and conclude that this $20,953.00 discrepancy indicates that the transfer was obtained without "reasonably equivalent" value and that judgment for the plaintiff trustee will lie if the other elements of § 547 or § 548 are established. Any such judgment must be reduced, however, by the amount of $5,098.00, inasmuch as the defendants have established that they have placed improvements on the property in that amount which would be an allowable credit against any recovery pursuant to § 550(d) of the Bankruptcy Code. The judgment would *not* be reduced by any broker's fees or other costs of sale since those costs have already been taken into account earlier in determining *cash sale* market value.

The other requirements for avoidance of a transfer under § 548 of the Bankruptcy Code are clearly established on the record of this proceeding. Those requirements are that the debtor not only received less than a reasonably equivalent value in exchange for the transfer, but also that the debtor was either insolvent on the date that the transfer was made, or that the debtor was engaged in business and was left with remaining property after the transfer that constituted unreasonably small capital for such business.

■ The insolvency is established in this case by the testimony of the debtor, Robert Zeman himself, together with various financial statements introduced into evidence issued by the debtor. While there is a great deal of discussion in the defendants' briefs about those exhibits, there is no contradicting *evidence* in the record on that score. The second requirement, i.e., unreasonably small capital to continue the business, is unquestionably established by the fact that the debtors told the defendants at the time of the quitclaim transaction that they would have to cease their farming operation.

■ The other requirements for avoiding the transfer under the § 547 preference provisions are likewise established in the record. The trustee has no other assets

whatsoever in this estate, other than the cause of action which constitutes this adversary complaint. By definition, therefore, the defendants obtained more than other creditors and more than they would have received as a creditor but for the transfer. It is also obvious that the defendants are "insiders" pursuant to § 101(28) of the Bankruptcy Code, and that the transfer in question is therefore attackable even though it took place more than 90 days prior to the filing of the bankruptcy petition.

The foregoing shall constitute findings of fact and conclusions of law pursuant to the Bankruptcy Rules, and a separate judgment for money damages in the amount of $15,855.00 shall issue accordingly.