**R.J. McCANNA II and Inez A. McCanna,**
**Plaintiffs/Appellants,**

v.

**James E. BURKE, Trustee,**
**Defendant/Appellee.**

**No. 6:94–CV–1261 MV/LCS.**

United States District Court,
D. New Mexico.

May 31, 1996.

Michael K. Daniels, Albuquerque, NM, Gary B. Ottinger, Albuquerque, NM, for plaintiffs.

Kelley L. Skehen, Singer, Smith & Williams, Albuquerque, NM, Yvette J. Gonzales, Albuquerque, NM, for defendant.

### ORDER

VAZQUEZ, District Judge.

**THIS MATTER** came before the Court upon the Proposed Findings and Recommended Disposition of the United States Magistrate Judge, and also upon Plaintiffs' objections to the Proposed Findings and Recommended Disposition and Defendant's objections to the Proposed Findings and Recommended Disposition. The Court, having made a *de novo* review of the Proposed Findings and Recommended Disposition and those portions to which the parties object, finds that the objections are not well-taken.

One objection merits discussion: Plaintiffs/Appellants' objection based on 11 U.S.C. § 365. The Magistrate Judge found that this issue constitutes a factual question that was never addressed in the bankruptcy

proceeding below and, therefore, not reviewable on appeal. Plaintiffs/Appellants object on the basis that this issue is a legal question subject to *de novo* review. However, Plaintiffs/Appellants' objection on this basis misses the point. The § 365 issue of the trustee's ability or inability to assume the conditions of the executory contract is but one more factor the bankruptcy court may consider in determining if the property in question was transferred for reasonably equivalent value. Therefore, just as the fair market value of the property may be considered, the issue of whether the trustee could have assumed the executory contract may also be considered on remand by the bankruptcy court.

**THEREFORE, IT IS HEREBY ORDERED** that the Magistrate Judge's Proposed Findings and Recommended Disposition are adopted by the Court;

**IT IS FURTHER ORDERED** that the decision of the bankruptcy court is reversed and this cause is remanded to the bankruptcy court for findings consistent with the Magistrate Judge's Proposed Findings and Recommended Disposition.

**IT IS FURTHER ORDERED** that this cause is hereby dismissed with prejudice.

## MAGISTRATE JUDGE'S PROPOSED FINDINGS AND RECOMMENDED DISPOSITION

### April 2, 1996

SMITH, United States Magistrate Judge.

### NOTICE

Within ten days after a party receives a copy of these Proposed Findings and Recommended Disposition that party may, pursuant to 28 U.S.C. § 636(b)(1), file written objections to such Proposed Findings and Recommended Disposition. A party must file written objections within the ten-day period allowed if that party desires appellate review. In the absence of timely-filed objections, no appellate review will be allowed.

### PROPOSED FINDINGS

#### 1. Statement of Relevant Facts

Plaintiffs appeal from an adverse ruling of the bankruptcy court. In that action, Defendant trustee brought an action to set aside a fraudulent transfer pursuant to 11 U.S.C. § 548: Defendant trustee contended that debtor's transfer of realty to Plaintiffs constituted a fraudulent transfer. At trial, the parties stipulated to three of the four requirements necessary to find a fraudulent transfer under § 548: (1) that there was a transfer of interest from the debtor; (2) that the transfer occurred within one year preceding the bankruptcy filing; and (3) that the debtor was insolvent on the date of the transfer. (Record on Appeal, Stipulated Facts [Doc. # 8]). Therefore, the trial solely focused on the fourth prong required to show a fraudulent transfer: whether the debtor received a "reasonably equivalent value" in exchange for the transfer. 11 U.S.C. § 548(a)(2)(A).

The relevant facts are undisputed. Debtors Julian and Jill Czel entered into a real estate contract with Plaintiffs which called for several monthly payments of $368.86 and one final balloon payment on December 31, 1991. (Record on Appeal, Witness List [Doc. # 16], Ex. A). Debtors defaulted before completion of the contract. Plaintiffs then filed a special warranty deed on September 12, 1991. (Record on Appeal, Stipulated Facts [Doc. # 8]). Per stipulation, this constituted transfer of the property. *Id.* At the time of the transfer, debtors owed approximately $32,140.00. *Id.* The parties to the instant action have stipulated that the fair market value of the property at the time of transfer was $70,000.00. *Id.* Defendant trustee then moved to set aside the transfer as a fraudulent conveyance.

The trial was held on July 21, 1994. At the conclusion of the trial, the bankruptcy court ruled for Defendant trustee and entered judgment in favor of Defendant trustee in the amount of $36,285.07 less ad valorem taxes paid of $2,909.91, for a total amount of $33,375.16. (Record on Appeal, Judgment [Doc. # 19]). The bankruptcy court arrived at this figure by subtracting the amount owed ($32,140.00) from the stipulated fair market value of the property at the time of transfer ($70,000.00). (Record on Appeal, Tr. at 49). It then gave Plaintiffs in the instant case a deduction for taxes paid. *Id.*

Plaintiffs timely appealed to the district court.

On March 29, 1996, the district court issued an order of reference, referring this case to me in order to recommend an ultimate disposition to the district court. Accordingly, I hereby issue these Proposed Findings and Recommended Disposition, which are subject to *de novo* review by the district court. 28 U.S.C. § 636(b)(1).

### 2. Issues Raised on Appeal

Plaintiffs raise seven issues in their Brief–in–Chief. Four of these issues deal with whether the bankruptcy court erred when it found that the debtor did not receive "reasonably equivalent value" in exchange for the transfer. (Pl.'s Br. at 1). Plaintiffs' fifth contention is that the bankruptcy court erred by excluding evidence of an expert witness on the issue of value of a defaulted real estate contract. *Id.* The sixth issue raised by Plaintiffs is that the bankruptcy court erred when it denied Plaintiffs a credit for attorneys' fees incurred against trustee's damage award.

▪ Plaintiff's last contention is that the bankruptcy court erred in failing to dismiss Defendant trustee's fraudulent conveyance action for violation of 11 U.S.C. § 365(b) to (d). *Id.* This Court will not pass on this last issue of the trustee's fraudulent conveyance action; this is a factual issue, *see In re O.P.M. Leasing Services, Inc.,* 28 B.R. 740, 751 (S.D.N.Y.1983), that was never raised before the bankruptcy court. A party cannot be heard to complain on appeal when a factual issue first raised on appeal was not brought to the attention of the bankruptcy judge. *In re Robinson,* 987 F.2d 665, 669 (10th Cir.1993).

▪ As for the issue of not allowing a credit for attorney fees incurred by Plaintiffs in subsequent litigation, I agree with the bankruptcy court that the subsequent case involving Plaintiffs and the debtor had nothing to do with the transfer at issue in the instant case. Therefore, the bankruptcy court's factual finding of irrelevancy of the subsequent action was correct, let alone clearly erroneous. *See In re Davidson Lum-*

*ber Sales, Inc.,* 66 F.3d 1560, 1563 (10th Cir.1995). Accordingly, I would affirm the bankruptcy court's disallowing a credit for attorney fees incurred in subsequent litigation.

### 3. Standard of Review

▪ In reviewing a bankruptcy decision, this Court will accept findings of fact unless clearly erroneous; however, conclusions of law are reviewed *de novo. Id.* This Court will examine whether the bankruptcy court applied the correct standard for determining whether the debtor received "reasonably equivalent value." This is a legal determination and entails *de novo* review by this Court.

### 4. Discussion

### a. Real Estate Contracts in New Mexico

▪ The transfer that occurred in the instant case arose as a result of a defaulted real estate contract. Because this transfer involved the integral state interest of titles to real property, the Bankruptcy Code must be "construed to adopt, rather than to displace, pre-existing state law." *BFP v. Resolution Trust Corp.,* 511 U.S. 531, ——, 114 S.Ct. 1757, 1765, 128 L.Ed.2d 556 (1994). Therefore, it is necessary to give some background on the status of real estate contracts in New Mexico, the forum state in the instant case.

▪ Although not statutorily recognized in New Mexico, real estate contracts have been afforded judicial blessing by the courts of this state. *See, e.g., Russell v. Richards,* 103 N.M. 48, 702 P.2d 993 (1985); *Manzano Industries, Inc. v. Mathis,* 101 N.M. 104, 678 P.2d 1179 (1984); *First National Bank v. Cape,* 100 N.M. 525, 673 P.2d 502 (1983); *Eiferle v. Toppino,* 90 N.M. 469, 565 P.2d 340 (1977); *Bishop v. Beecher,* 67 N.M. 339, 355 P.2d 277 (1960). The parties to a real estate contract and their assignees assent to be bound to the terms and provisions of that contract "and to accept the burdens of the contract together with its benefits." *Russell,* 103 N.M. at 50, 702 P.2d at 995. Absent circumstances that result in an inequitable forfeiture, the courts will enforce a real estate contract. *Id.* at 51, 702 P.2d at 996.

338

*See also Manzano Industries, Inc. v. Mathis,* 101 N.M. 104, 678 P.2d 1179 (1984).

■ Strong public policy favors enforcement of such contracts. *Bishop v. Beecher,* 67 N.M. 339, 355 P.2d 277 (1960). The policy underlying recognition of real estate contracts was stated by the New Mexico Supreme Court in *Bishop:*

> [C]ontracts such as this are utilized as devices to allow purchases of property with very small down payments. This is on the theory that in gaining the advantage of the elimination of the larger initial investment, the grantee must forego whatever advantage he might obtain by reason of the delays incident to foreclosure and redemption. Admittedly, there may be some disadvantages of this type of contract, but it is felt that the advantages far outweigh them when the benefits, which are derived by thousands of people who have been enabled to purchase property by merely paying for it over many years in a manner likened to rent, are considered.

*Id.* at 342, 355 P.2d at 279. Hence, real estate contracts have generally proven beneficial to both buyers and sellers: the seller gets a quick forfeiture period, while the buyer is not hindered by financing problems.

■ In order to prevent unfair exploitation or other abuses, New Mexico courts have included certain safeguards to protect vendees. This is especially true in the context of forfeiture provisions found in real estate contracts. Generally, real estate contracts containing a forfeiture provision have been found to be enforceable. *First National Bank v. Cape,* 100 N.M. 525, 527, 673 P.2d 502, 505 (1983). In the event of default, the vendor has the option of terminating the contract, regaining possession of the property and retaining the payments made by the vendee prior to default. *Id.* at 527–28, 673 P.2d at 505–06. However, if enforcement of the forfeiture provisions of a real estate contract would shock the judicial conscience, the court will not enforce the inequitable terms. *See, e.g., Manzano Industries, Inc. v. Mathis,* 101 N.M. 104, 678 P.2d 1179 (1984).

■ In making this determination, the courts will look at various factors. This includes, but is not limited to, the amount of money already paid by the vendee to the vendor, the period of possession of the property by the vendee, the market value of the property at the time of default compared to the original sales price, and the rental potential and value of the real property. *Russell v. Richards,* 103 N.M. 48, 50, 702 P.2d 993, 995 (1985). "Determination of whether a forfeiture provision of a real estate contract should be enforced is a matter within the sound discretion of the trial court." *Albuquerque National Bank v. Albuquerque Ranch Estates, Inc.,* 99 N.M. 95, 102, 654 P.2d 548, 555 (1982).

■ In the context of a forced judicial sale of real property, it is the rule in New Mexico that a judicial sale will *not be set aside* for inadequacy of price unless the amount shocks the conscience of the court or there are additional circumstances making the sale inequitable. *Armstrong v. Csurilla,* 112 N.M. 579, 591, 817 P.2d 1221, 1233 (1991). In *Armstrong,* Justice Montgomery suggested, without holding, that a price range of 10–40% of value may well shock the judicial conscience, and that a price of 40–70% of value, when combined with inequitable conditions, may warrant vacating the sale. *Id.* at 593, 817 P.2d at 1235.

■ In conclusion, it is clear that in the absence of a "clear and manifest" federal statutory purpose, the Bankruptcy Code must adopt New Mexico law dealing with forfeiture under a real estate contract. *See BFP v. Resolution Trust Co.,* 511 U.S. 531, ——, 114 S.Ct. 1757, 1765, 128 L.Ed.2d 556 (1994). Hence, in order to invalidate a forfeiture provision, there must be a judicial determination that the provision shocks the judicial conscience. If its conscience is not disturbed, a court must take account of the effect a distressed real estate contract will have on that property's worth for purposes of determining whether the transfer was for "reasonably equivalent value." *See id.* at ——, 114 S.Ct. at 1767.

### b. "Reasonably Equivalent Value"

■ The authorities are in agreement that Congress did not provide a definition of

reasonably equivalent value ("REV") in the federal bankruptcy statutes. *See, e.g., In re Morris Communications NC, Inc.,* 914 F.2d 458, 466 (4th Cir.1990). Thus, the courts have been left with the responsibility of defining the term. *Id.* A review of the case law reveals four precepts in construing REV. First, the fair market value of the property in question cannot usually be used as the sole determinant, especially in foreclosure actions. *See, e.g., BFP v. Resolution Trust Co.,* 511 U.S. 531, ——, 114 S.Ct. 1757, 1761, 128 L.Ed.2d 556 (1994) (fair market value cannot always be the benchmark); *Morris Communications,* 914 F.2d at 466 (REV not wholly synonymous with market value); *In re Vermillion,* 176 B.R. 563, 569 (D.Or.1994). Second, although not wholly determinative, the market value of the property at issue is an important query and will often serve as a starting point for deciding whether REV was received by the debtor. *Morris Communications,* 914 F.2d at 466; *In re Wise,* 119 B.R. 392, 394 (E.D.N.Y.1990). Third, the property at issue must be disposed of in a manner consistent with the law of the forum state. *BFP,* 511 U.S. at —— – ——, 114 S.Ct. at 1764–65. Finally, a bankruptcy court should consider all of the facts of each case, one of which may be the market value of the property. *Morris Communications,* 914 F.2d at 467.

 Thus, it is left for this Court to determine whether the bankruptcy court applied the correct legal standard for determining REV, which is a *de novo* determination. In the instant action, Plaintiffs' first contention is that the bankruptcy court erred when it labeled the property at issue (the property transferred by debtor to Plaintiffs) as realty instead of as a contract right. This contention is clearly at odds with existing New Mexico law on property and interests in property, which must be applied in bankruptcy proceedings brought in the forum state. *In re KAR Development Associates,* 180 B.R. 629, 636 (D.Kan.1995). In *In re Veretto,* 131 B.R. 732 (D.N.M.1991), the bankruptcy court stated that "[t]he law in New Mexico is well settled that a purchaser under a real estate contract has acquired a property interest in land." *Id.* at 736. Thus, it follows that a purchaser can only convey what he already

has: an interest in real property. Therefore, Plaintiffs' argument that the property at issue is solely a contract right, instead of a real property interest, is without merit.

 However, Plaintiffs also assert that the bankruptcy court should not have relied exclusively on the fair market value of the real property to determine whether the debtor received REV. Specifically, Plaintiffs rely on *BFP v. Resolution Trust Co.,* 511 U.S. ——, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), for the proposition that "fair market value cannot—or at least cannot always—be the benchmark." *Id.* at ——, 114 S.Ct. at 1761. *See also In re Vermillion,* 176 B.R. 563, 568–69 (D.Or.1994) (REV is not the equivalent of fair market value). Because this involves a legal issue, this Court must review it *de novo.*

In *BFP,* a vendor filed a notice of default and scheduled a foreclosure sale on a residential property used as security after the vendee failed to meet its payment obligations on a loan. *BFP,* 511 U.S. at ——, 114 S.Ct. at 1759. The foreclosure proceedings were delayed upon the filing of a bankruptcy petition by the vendee. *Id.* After dismissal of that petition, the property was sold at a foreclosure sale, where it was purchased for $433,000. *Id.* Subsequently, the vendee again filed for bankruptcy. Acting as a debtor in possession, the vendee filed a complaint pursuant to § 548, alleging that the foreclosure sale constituted a fraudulent transfer. *Id.* In its allegation, the vendee contended that the value of the property was actually over $725,000 at the time of the foreclosure sale. *Id.*

Acting on separate motions, the bankruptcy court dismissed the complaint and also granted summary judgment in favor of the vendor. The federal district court affirmed the bankruptcy court's dismissal of the complaint, while the bankruptcy appellate panel affirmed the court's entry of summary judgment. In its opinion, the bankruptcy appellate panel held that a "non-collusive and regularly conducted nonjudicial foreclosure sale ... cannot be challenged as a fraudulent conveyance because the consideration received in such a sale establishes 'reasonably equivalent value' as a matter of law." *Id.* at

——, 114 S.Ct. at 1760 (quoting *In re BFP*, 132 B.R. 748, 750 (9th Cir. BAP 1991)). This decision was affirmed by the Ninth Circuit in *In re BFP*, 974 F.2d 1144 (9th Cir.1992). Certiorari was then granted by the United States Supreme Court. *BFP v. Resolution Trust Corp.*, 508 U.S. 938, 113 S.Ct. 2411, 124 L.Ed.2d 635 (1993).

The Supreme Court was presented with the question of whether the foreclosure sale amount of $433,000 was "reasonably equivalent" to the value of the real estate conveyed. *BFP*, 511 U.S. at ——, 114 S.Ct. at 1760. The Court first noted that § 548 "seemingly goes out of its way" to avoid defining reasonably equivalent value as the fair market value. *Id.* at ——, 114 S.Ct. at 1761. Later, the Court opined that "market value, as it is commonly understood, has no applicability in the forced-sale context; indeed, it is the very antithesis of forced-sale value." *Id.* Further, " 'fair market value' presumes market conditions that, by definition, simply do not obtain in the context of a forced sale." *Id.* The Court also noted that

> The language of § 548(a)(2)(A) ("received less than a reasonably equivalent value in exchange") requires judicial inquiry into whether the foreclosed property was sold for a price that approximated its worth at the time of sale. An appraiser's reconstruction of "fair market value" could show what similar property would be worth if it did not have to be sold within the time and manner strictures of state-prescribed foreclosure. But property that must be sold within those strictures is simply worth less.

*Id.* at ——, 114 S.Ct. at 1762. For all of these reasons, the majority concluded that reasonably equivalent value cannot be defined as fair market value in the context of mortgage foreclosure sales. It then held that the reasonably equivalent value of foreclosed property was the price actually received at the foreclosure sale, assuming compliance with all applicable state foreclosure laws. *Id.* at ——, 114 S.Ct. at 1765.

▇▇▇ After examining the entire record and especially the facts peculiar to the instant case, I conclude that the fair market value should not have been used as the benchmark for determining REV. "Fair market value" is defined in New Mexico as what a willing buyer would pay a willing seller for property if it were offered for sale in the open market for a reasonable time, without either party being compelled to act and with knowledge of all the uses to which that property is suitable. *Board of Commissioners v. Gardner*, 57 N.M. 478, 484, 260 P.2d 682, 686 (1953); UJI 13–711 (jury instruction for eminent domain cases). A review of the record indicates that the bankruptcy court did not consider the value of the real property subject (as it was) to a distressed contract, but instead gave almost exclusive consideration to the property's fair market value. (*See* Record on Appeal, Tr. at 47–49). The bankruptcy court began with the figure of $70,000: this was the stipulated fair market value of the property at the time of the transfer. (Record on Appeal, Tr. at 47). It has been stated that fair market value is an important factor and is ordinarily a helpful starting point in determining REV. *In re Morris Communications NC, Inc.*, 914 F.2d 458, 466–67 (4th Cir.1990). While true, the conditions peculiar to the instant action should have been addressed, especially the terms of the defaulted real estate contract, which was already four payments behind and included a large balloon payment becoming due about three months after the transfer of property occurred.

Instead, the bankruptcy court deducted the lien on the property from the market value. This resulted in the amount of $36,285.07. The bankruptcy court then deducted ad valorem taxes paid of $2,909.91 for a final total of $33,375.16. (Record on Appeal [Doc. # 19] ). Thus, the bankruptcy court essentially relied on the fair market value of the property and did not consider all relevant factors in light of the particular circumstances of this case. Specifically, it failed to account for the value of the property to the trustee on the date of transfer in light of the terms of the distressed real estate contract. Hence, I find that the bankruptcy court did not apply the correct legal standard for determining REV in this particular case. *See BFP v. Resolution Trust Co.*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994).

On this point, I find *BFP* to be persuasive. First, in *BFP* the Supreme Court stated that in determining REV, a bankruptcy court must follow established state law unless the Bankruptcy Code speaks in a clear and manifest manner on the subject. *Id.* at ——, 114 S.Ct. at 1765. The Court in *BFP* then noted that the Bankruptcy Code has not spoken clearly on the subject of REV. *Id.* Third, although limiting its holding to the foreclosure sale context, *BFP*, 511 U.S. at —— n. 3, 114 S.Ct. at 1761 n. 3, a condition not present in the instant case, the Court opined that "any fact bearing upon the property's use or alienability" would affect the worth of that property. *Id.* at ——, 114 S.Ct. at 1767. Moreover, I find the *BFP* approach of conducting a practical examination of all relevant circumstances involving the realty in light of applicable state law to be the best method for determining REV. Notwithstanding that the *BFP* holding specifically applies only in the context of a foreclosure sale, its rationale applies with equal force to situations involving a contract forfeiture.[1] Where, as here, the real property at issue was subject to a distressed real estate contract, a bankruptcy court should (a) first determine whether the forfeiture provision of the contract is enforceable and (b) if so, adduce evidence on the issue of the property's value to the trustee contingent on the effect the distressed contract has on that property's worth on the date of transfer.

In situations such as the instant case, it may be (although rare) that the property's value equals the fair market value. Conversely, the property's value may be the amount owed on the debt. In all likelihood, however, it is something in between.[2] Hence, there can be no bright line test.

### MAGISTRATE JUDGE'S RECOMMENDED DISPOSITION

For these reasons, I recommend that the decision of the bankruptcy court be reversed and that this case be remanded to allow the bankruptcy court to adduce evidence, through all competent and relevant testimony and exhibits, related to the value of the real property to the trustee at the time of transfer had the trustee been holding the property subject to the terms of the distressed contract. Accordingly, findings of fact will be required to support the bankruptcy court's decision on the issue of reasonably equivalent value. However, I emphasize that nothing in this Recommended Disposition precludes the bankruptcy court from using the fair market value of the transferred property as part of its inquiry for determining that property's value.

---

**1.** "And it is no more realistic to ignore that characteristic of the property (the fact that state foreclosure law permits the mortgagee to sell it at forced sale) than it is to ignore other price-affecting characteristics...." *Id.* at ——, 114 S.Ct. at 1762.

**2.** In these situations, it generally appears that with more favorable terms in the real estate contract, there will be a correspondingly higher value for that property.