In re Robert J. GRADY, aka Bob Grady & Associates, dba B & L Cafe, Lourdes Grady, Debtors.

Carol F. DUNBAR, Trustee, Plaintiff,

v.

Bernice JOHNSON, Defendant.

Bankruptcy No. 96–20970KD.
Contested No. 1101.
Adv. No. 96–2088KD.

United States Bankruptcy Court,
N.D. Iowa.

Oct. 24, 1996.

Joseph A. Peiffer, Cedar Rapids, IA, for Plaintiff Carol F. Dunbar, Trustee, and Debtors Robert J. and Lourdes Grady.

Francis Wm. Henkels, Dubuque, IA, for Defendant Bernice Johnson.

## ORDER

PAUL J. KILBURG, Bankruptcy Judge.

On August 20, 1996, this matter came on for trial in the captioned adversary case and for final hearing on Motion for Relief from Stay filed in the captioned bankruptcy case. Attorney Francis Wm. Henkels represented Defendant Bernice Johnson. Attorney Joseph A. Peiffer represented Trustee Carol Dunbar and Debtors Robert and Lourdes Grady (collectively referred to as "Trustee"). After the presentation of evidence and arguments of counsel, the Court took the matter under advisement. The time for filing briefs has now passed and this matter is ready for resolution. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(G, H).

### STATEMENT OF THE CASE

Trustee filed an adversary proceeding to avoid the prepetition forfeiture of Debtors' real estate contract with Defendant Bernice Johnson. Johnson filed a Motion for Relief From Stay concerning the same real estate. These matters were combined for trial.

Trustee asserts that the Forfeiture of a Real Estate Contract was defective. She

further argues that even if valid, the forfeiture should be avoided as a fraudulent transfer under § 548(a)(2). Johnson argues that the forfeiture substantially complied with Iowa law and cannot be avoided under § 548. In support of her motion for relief from stay, Johnson asserts she is not adequately protected and Debtors have no equity in the property.

### FINDINGS OF FACT

The parties entered into a real estate contract in 1982 for certain property, operated as a cafe, in Monona, Iowa. The purchase price under the contract was $70,000. After Debtors defaulted on the contract, Johnson served a Notice of Forfeiture on February 29, 1996. At that time Debtors' remaining debt under the contract was approximately $12,000. They were $3,530 delinquent in the payment of real estate taxes.

The Notice of Forfeiture stated that contract payments were delinquent from January 1995 in the amount of $6,300. This was incorrect. Johnson sent Debtors a certified letter on March 5, 1996 correcting the Notice. The letter said that payments were $3,300 delinquent from July 1995.

On April 11, 1996, Johnson recorded an Affidavit in Support of Forfeiture of Real Estate Contract in Clayton County. Debtors filed their Chapter 13 petition in bankruptcy on April 23, 1996.

Debtors had tried to sell the property during the year before the forfeiture. They received one offer for approximately $45,000 during that time and another offer for $35,-000. Those transactions did not close.

An offer is currently pending in the amount of $40,010. The purchaser believes financing is forthcoming and is willing to sign an extension to keep the offer alive during these proceedings, if necessary. The offer is contingent on receiving a parking easement from the adjacent Quick Trip store. Debtors have had no previous problems with the easement.

Debtors are willing to sell the property. A six percent sales commission will be deducted from the $40,010 purchase price. From the remainder, Debtors intend to pay Johnson the $12,000 due on the real estate contract and $3,830 in property taxes Johnson recently paid to redeem the property from tax sale. Debtors contemplate funding a 100 per cent Chapter 13 plan with the remainder of their equity in the property. Debtors do not believe they can propose a feasible Chapter 13 plan if the forfeiture is not avoided.

Based on their equity in the property, Debtors were marginally solvent prior to the forfeiture of the contract. The forfeiture rendered them insolvent.

### VALIDITY OF FORFEITURE

Trustee first argues that the inaccuracies in the notice of forfeiture nullify the forfeiture. In Iowa, forfeiture is completed by compliance with Chapter 656 and the passage of thirty days after service of notice. Iowa Code §§ 656.2, .4; *Gottschalk v. Simpson,* 422 N.W.2d 181, 184 (Iowa 1988); *Lett v. Grummer,* 300 N.W.2d 147, 149 (Iowa 1981). Iowa courts follow the general rule of construction that equity abhors a forfeiture. *Jamison v. Knosby,* 423 N.W.2d 2, 4 (Iowa 1988). "In adherence to that rule, forfeiture statutes are to be construed strictly against a forfeiture, with the burden to show full and strict compliance with the statutory procedures upon the party seeking forfeiture." *Id.* at 5.

Applying these principles in *Brown v. Nevins,* 499 N.W.2d 736, 738 (Iowa App.1993), the court set aside a forfeiture which was based on the buyer's failure to pay the $40 cost of serving notice. The buyer had equity in the property of approximately $18,000. The notice had not stated the amount of the costs of service and the buyer paid the $40 soon after being notified of the amount due. *Id.*

Johnson cites *Hampton Farmers Co-op. Co. v. Fehd,* 257 Iowa 555, 133 N.W.2d 872 (1965), to support the validity of the forfeiture. In *Hampton Farmers Coop,* the notice of forfeiture stated that the contract seller intended to accelerate all payments upon the buyers' default. *Id.,* 133 N.W.2d at 873. The court held that this was not appropriate. *Id.* at 874. It refused, however, to set aside the notice of forfeiture as a nullity based on

this inaccuracy. *Id.* at 875. The notice also specified that the buyer was in default for nonpayment of principal and interest.

> The default was conceded. It was specified in the notice and was sufficient to entitle vendors to invoke a forfeiture. The fact that vendees overstated the requirements to reinstate the contract is not fatal to the notice under the Iowa cases.

*Id.* at 876. The Iowa Supreme Court previously upheld forfeitures though the notice stated $500 was due when in reality only $185 was due and though an inaccurate notice accurately stated that taxes were unpaid. *Id.* at 875 (citations omitted).

This Court concludes that the forfeiture should not be set aside based on the notice's inaccuracy concerning the amount Debtors were in default. The notice accurately stated the amount of taxes which were delinquent. Debtors concede they were in default for nonpayment of taxes and delinquencies in monthly payments. Johnson quickly corrected the inaccuracy regarding defaults in payment by certified letter to Debtors. The fact that the notice inaccurately stated the amount of payments in default does not render the notice a nullity. The forfeiture will not be set aside based on the Notice's inaccuracy.

### FORFEITURE AS FRAUDULENT TRANSFER

 Fraudulent transfer is defined in § 548(a) which states, in relevant part, as follows:

> (a) The trustee may avoid any transfer of an interest of the debtor in property, or any obligation incurred by the debtor, that was made or incurred on or within one year before the date of the filing of the petition, if the debtor voluntarily or involuntarily—
>
> . . . . .
>
> (2)(A) received less than a reasonably equivalent value in exchange for such transfer or obligation; and
>
> (B)(i) was insolvent on the date that such transfer was made or such obligation was incurred, or became insol-

vent as a result of such transfer or obligation.

11 U.S.C. § 548(a)(2). Fraudulent transfer, therefore, contains five elements: (1) an interest of the debtor in property; (2) voluntarily or involuntarily transferred; (3) within one year of filing bankruptcy; (4) where debtor received less than reasonably equivalent value; and (5) debtor was insolvent at the time of the transfer or became insolvent as a result thereof. *In re Bockes Bros. Farms, Inc.,* Adv. No. 93–6127KW, slip op. at 5 (Bankr.N.D.Iowa Jan 6, 1994). The burden of proof is on the party seeking to avoid a fraudulent transfer to establish each of the five elements by a preponderance of evidence. *Id.; In re Breuer,* 68 B.R. 48, 49 (Bankr.N.D.Iowa 1985).

This Court has previously ruled that forfeiture of a real estate contract can constitute a fraudulent transfer under 11 U.S.C. § 548(a)(2). *Bockes Bros.,* slip op. at 6; *In re Seifert,* No. 87–00614D, Adv. No. 87–0243D, slip op. at 6 (Bankr.N.D.Iowa Feb. 17, 1988).

> The debtor/contract buyer has an interest in property under state law as equitable owner under the real estate contract. "The question of whether the contract forfeiture effects a transfer within the meaning of § 548(a) is a question of federal law." *Hulm* held that judicial foreclosure of a mortgage constitutes a § 548(a) transfer. The court in *Seifert* compared forfeiture of a real estate contract to foreclosure of a mortgage in concluding that the forfeiture also effects a transfer within the meaning of 548(a).

*Bockes Bros.,* slip op. at 5 (citations omitted); *see In re Hulm,* 738 F.2d 323, 326 (8th Cir.), *cert. denied,* 469 U.S. 990, 105 S.Ct. 398, 83 L.Ed.2d 331 (1984). Similarly, in *In re Zeman,* 60 B.R. 764 (Bankr.N.D.Iowa 1986) although a forfeiture did not occur, the debtors/contract buyers gave a quit claim deed back to the contract sellers, one of the debtor's parents. *Id.* at 766. The court held that this was a transfer of valuable contract rights held by the debtors as equitable owners of the property. *Id.; see also In re Veretto,* 131 B.R. 732 (Bankr.D.N.M.1991).

Johnson's forfeiture of her real estate contract with Debtors satisfies the first two elements of a fraudulent transfer under § 548(a)(2) in that it constitutes an involuntary transfer of Debtors' admitted interest in property under the contract. Two of the three remaining elements of § 548(a)(2) are also easily resolved. The forfeiture was complete in early April 1996, well within one year of filing the petition on April 23, 1996. The record also establishes that the forfeiture rendered Debtors insolvent.

█ The critical element Trustee must prove is that Debtors received less than reasonably equivalent value from this involuntary transfer. The measure of the value Debtors received through the forfeiture must be viewed in terms of the contract balance due at the date of the transfer. *See Bockes Bros.,* slip op. at 6, *Zeman,* 60 B.R. at 766.

> The forfeiture cancels Debtor's right to possession of the property and its duty to pay the remaining contract balance. The amount necessary to [pay off the contract balance] at the time of forfeiture was approximately $5,000. Debtor offered expert testimony that the property is worth $59,-000. [ ] Based on the record presented, the Court concludes that forgiveness of a $5,000 debt is not reasonably equivalent value for the loss of an interest in property worth in excess of $50,000. *See Zeman,* 60 B.R. at 768 (concluding that cancellation of contract balance of $307,000 is not reasonably equivalent value for property worth $328,000).

*Bockes Bros.,* slip op. at 6.

Subsequent to the *Bockes Bros.* ruling, the U.S. Supreme Court decided *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994). It held that:

> a fair and proper price, or a "reasonably equivalent value," [under § 548(a)(2) ] for foreclosed property, is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with.

511 U.S. at ——, 114 S.Ct. at 1765. Johnson argues that *BFP* applies to this contract forfeiture as well as it does to foreclosure sales. She asserts that *BFP* requires the

Court to deem satisfaction of the contract balance through forfeiture to be "reasonably equivalent value" under § 548(a)(2).

In *BFP,* the Court concluded as follows:

> *Unlike* most other legal restrictions, [ ] foreclosure has the effect of completely redefining the market in which the property is offered for sale; normal free-market rules of exchange are replaced by the far more restrictive rules governing forced sales. Given this altered reality, and the concomitant inutility of the normal tool for determining what property is worth (fair market value), the only legitimate evidence of the property's value at the time it is sold is the foreclosure sale price itself.

*Id.* at ——, 114 S.Ct. at 1767.

The Supreme Court limited the *BFP* opinion to cover only mortgage foreclosures of real estate. *Id.* at —— n. 3, 114 S.Ct. at 1761 n. 3. Bankruptcy courts have subsequently applied its holding to forced tax sales of real estate. *In re Comis,* 181 B.R. 145, 150 (Bankr.N.D.N.Y.1994); *In re Golden,* 190 B.R. 52, 58 (Bankr.W.D.Pa.1995); *In re Lord,* 179 B.R. 429, 434 (Bankr.E.D.Pa.1995). These courts tend to focus on whether the debtor has similar legal protections in the event of forced tax sales to those a mortgagor would have under state law in the event of mortgage foreclosure. *Golden,* 190 B.R. at 58; *Lord,* 179 B.R. at 433–34.

Two recent cases have applied the *BFP* holding to real estate contract forfeitures. *In re Vermillion,* 176 B.R. 563 (Bankr.D.Or. 1994); *McCanna v. Burke,* 197 B.R. 333 (D.N.M.1996). For reasons set out hereafter, this Court does not conclude that either of these cases is controlling here.

The question presented in *BFP* was whether the amount of debt satisfied at a foreclosure sale was "reasonably equivalent" to the worth of the real estate conveyed. The Supreme Court concluded that a non-collusive and regularly conducted non-judicial foreclosure sale cannot be challenged as a fraudulent conveyance because the consideration received in such a sale establishes "reasonably equivalent value" as a matter of law. *BFP,* 511 U.S. at ——, 114 S.Ct. at 1760. A careful reading of *McCanna* reflects the

court did not conclude that the contract balance in the forfeiture context established reasonably equivalent value as a matter of law. Rather, the court focused upon that portion of *BFP* dealing with how a trial court should delineate and value the various factors in determining "reasonably equivalent" value. *McCanna,* 197 B.R. at 341.

The bankruptcy court had relied exclusively upon the fair market value of the real estate to determine whether debtors received reasonably equivalent value. 197 B.R. at 339. The district court, acting in its capacity as an appellate court, concluded that the bankruptcy court should have applied the *BFP* approach by conducting a practical examination of all relevant circumstances involving the reality in light of applicable state law in making the determination of reasonably equivalent value. *Id.* at 341. Since the bankruptcy court relied solely on fair market value, the district court remanded the case to the bankruptcy court to make the determination of reasonably equivalent value in light of this approach. *Id.*

In *Vermillion,* a forfeiture occurred in which the debtors' interest in the property was extinguished by recording a declaration of forfeiture. 176 B.R. at 566. No sale was conducted. The Court concluded that if the forfeiture procedure was regularly conducted pursuant to State law, the analysis upon which the *BFP* holding is based applies with equal validity, despite the absence of a sale, as a step toward elimination of the defaulting parties' interest. *Id.* at 569. The court ultimately concluded that:

> Absent a debt so small as to shock the conscience, the cancellation of the remaining debt on an Oregon land sale contract through a forfeiture proceeding regularly conducted pursuant to state law is "reasonably equivalent value" for the debtor's interest in the property within the meaning of § 548(a)(2)(A).

*In re Vermillion, Id.* at 570.

This Court must respectfully disagree with that conclusion for several reasons. First, the Oregon procedure, like Iowa, does not require a sale in a statutory contract forfeiture. As such, the market forces, even if altered, do not come into play. Second, and

more fundamentally, the U.S. Supreme Court in *BFP* established reasonably equivalent value as a matter of law. This mandates that the sale price is conclusively presumed to be a reasonably equivalent value in all cases. When applied to a contract forfeiture where no sale occurs, the only barometer to determine value is the amount of any debt remaining on the sale contract. This amount has no relationship to market forces. If the contract has been in effect for some time, the remaining debt could be minuscule and bear no relationship to reasonably equivalent value.

The Court in *Vermillion* recognizes this possibility when it provides an exception when the debt is so small as to shock the conscience. However, providing an exception, negates the rule established by the Supreme Court when it established a standard as a matter of law. So analyzed, the conclusion of the court in *Vermillion* is similar, if not identical, to that utilized by the court in *In re Bundles,* 856 F.2d 815, 820 (1988), when it scrutinized a variety of factors with a rebuttable presumption that the sale price would be sufficient to withstand attack under § 548(a)(2). This rebuttable presumption approach was rejected by the U.S. Supreme Court when it made the determination as a matter of law in *BFP.* As such, it appears to this Court that the *Vermillion* court was applying a standard which is inconsistent with that set out in *BFP.*

The specific issue presented in this case is one of first impression in the Northern District of Iowa. It is the conclusion of this Court that *BFP,* when applied to a land sale contract forfeiture, does not provide as a matter of law that the remaining contract balance establishes reasonably equivalent value. Pre–*BFP* cases considering reasonably equivalent value in the context of contract forfeiture or strict foreclosure are instructive. *In re Madrid,* 21 B.R. 424, 427 (9th Cir. BAP 1982), is an early case which held, as did *BFP,* that the § 548(a)(2) reasonably equivalent value requirement means the same as the consideration received at a noncollusive and regularly conducted foreclosure sale. The court in *In re Carr,* 40 B.R. 1007, 1008 (D.Conn.1984), considered whether to

apply the *Madrid* presumption in the context of strict foreclosure proceedings. It stated:

> In this case the debtor's property was transferred through strict foreclosure, rather than through foreclosure by sale. The market forces that can enhance the price received in a public sale were effectively immobilized. In strict foreclosure, the "price" received is only as great as the amount of the debt owed to the foreclosing creditor.
>
> Since the presumption in *Madrid* is premised in part on the value-enhancing aspects of a public sale, it cannot be translated into the context of strict foreclosure. Without the objective assessment of value that a sale provides, the bankruptcy court properly evaluated [reasonably equivalent value] in light of all the circumstances surrounding the transfer.

*Id.* at 1009. The *Madrid* presumption of "reasonably equivalent value" rests in part on the triggering of market forces a public sale effects. *Id.*

In *In re Berge*, 33 B.R. 642, 645 (Bankr. W.D.Wis.1983), the court considered the applicability of the *Madrid* presumption in strict foreclosure proceedings upon default on a land contract. It distinguished *Madrid* by pointing out that upon the contract buyer's failure to redeem, any inadequacy of consideration is the result of appreciation in land values, not a low bid at sale. *Id.* at 647. In strict foreclosure, general creditors do not have the protection of the marketplace because no sale is conducted. *Id.* at 650. The property is tendered by operation of law, without advertising or sale, and with an extremely brief period of redemption. *Id.; see also In re Perdido Bay Country Club Estates, Inc.*, 23 B.R. 36, 41 (Bankr.S.D.Fla.1982) (stating that Vermont strict foreclosure with no sale created the kind of inequity § 548 is designed to prevent).

■ Based on the foregoing, the Court concludes that contract forfeiture in Iowa is sufficiently dissimilar from mortgage foreclosure by sale that *BFP* does not apply. *Contra Vermillion*, 176 B.R. at 570. In mortgage foreclosure sales, market forces are mobilized by advertising of the sale, advance notice and bidding, and participation of non-creditors to secure the best price available for the debtor's property. In contract forfeitures in Iowa, notice is generally received only by the contract buyers, no other creditors are involved, and the buyers have a mere 30 days to cure the default to avoid loss of their equitable interests. Unlike tax sales, contract forfeitures do not provide debtors with protections similar to those given a mortgagor under Iowa law. *See* Iowa Code Ch. 654.

Debtors' real estate is worth at least $40,000. The balance remaining on the contract plus unpaid taxes total approximately $15,830. The forfeiture had the effect of canceling this debt and transferring the property to Johnson. Taking into account all the surrounding circumstances, the Court concludes that cancellation of debt of $15,830 in exchange for the transfer of property worth $40,000 does not constitute reasonably equivalent value under § 548(a)(2). Unlike the sale price received at a foreclosure sale, forgiveness of debt by contract forfeiture is not dispositive on the issue of reasonably equivalent value.

### RELIEF FROM AUTOMATIC STAY

■ Under § 362(d)(2), the Court shall grant relief from the automatic stay to allow a creditor to pursue an action against property if the debtor lacks equity in the property and the property is not necessary for an effective reorganization. The burden is on the moving party to prove that Debtors lack equity in the property. 11 U.S.C. § 362(g). If that is proven, the burden shifts to Debtors to show that the property is necessary for an effective reorganization. *In re Anderson*, 913 F.2d 530, 532 (8th Cir.1990).

■ The Court has already determined that Debtors have substantial equity in the real estate. At least half of its $40,000 value will be available to creditors after paying the contract balance, taxes and real estate commission. Furthermore, the property is necessary for a successful reorganization. Without the proceeds from the sale of the property, Debtors will be unable to propose a feasible Chapter 13 Plan. Johnson is adequately protected by Debtors' equity in the

property considering that an offer to purchase is currently pending.

**WHEREFORE,** the inaccuracy in Johnson's Notice of Forfeiture does not render it a nullity.

**FURTHER,** forfeiture of the real estate contract is a fraudulent transfer under § 548(a)(2) and is hereby avoided.

**FURTHER,** Johnson is not entitled to relief from the automatic stay.

**SO ORDERED.**