In re Trevette R. VERMILLION, Debtor.

Trevette R. VERMILLION, Plaintiff,

v.

Stewart SCARBROUGH and Nancy Scarbrough, Defendants.

Bankruptcy No. 693–62730.
Adv. No. 93–6173.

United States Bankruptcy Court,
D. Oregon.

Dec. 23, 1994.

Keith Boyd, Grants Pass, OR, for plaintiff/debtor.

Richard C. Josephson, Portland, OR, for defendants.

## MEMORANDUM OPINION

POLLY S. HIGDON, Bankruptcy Judge.

This matter is before the court, and is ripe for decision, on the defendants' motion for summary judgment. The plaintiff, a Chapter 11 debtor-in-possession, (hereinafter "debtor") relies on 11 U.S.C. § 548(a)(2) to recover real property which he lost through a land sale contract forfeiture. The defendants have asked the court to apply the holding of *BFP v. Resolution Trust Corp.*, —— U.S. ——, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994) to find that as a matter of law the forfeiture cannot be avoided as a fraudulent transfer under § 548.

### I. Facts

The facts are undisputed. In 1978 defendant Diane Scarbrough acquired the vendee's interest in a contract of sale (hereinafter the "Hilderbrand/Bridges contract") of certain real property situated in Jackson County,

Oregon (hereinafter the "property"). In 1980 she conveyed her interest in the property to herself and co-defendant Stewart Scarbrough. In 1982 they conveyed their interest in the Hilderbrand/Bridges contract to Michael Grassmueck with Grassmueck becoming obligated to pay the contract according to its terms. As part of this sale the defendants also entered into a contract with Grassmueck ("Scarbrough/Grassmueck contract") whereby Grassmueck agreed to pay them an additional $47,074.05 in installments with a balloon payment due on July 5, 1992. The contract provided for forfeiture in case of default. In 1986 Grassmueck assigned his interest in both the Hilderbrand/Bridges and Scarbrough/Grassmueck contracts to the debtor who assumed the vendee's liability under both. In 1988 the debtor paid Hilderbrand the remaining balance due on the Hilderbrand/Bridges contract. Thereafter the debtor and the defendants held the only interests in the property.

The debtor defaulted on his payments to the defendants under the Scarbrough/Grassmueck contract. On November 13, 1992, they recorded a declaration of forfeiture following the statutory procedure mandated by ORS 93.905 et seq. The debtor has stipulated that the contract forfeiture procedure was regularly conducted. At the date of the forfeiture the debtor owed the defendants $40,873.57. Under Oregon law the debtor's interest in the property was extinguished on November 13, 1992, the date the declaration of forfeiture was recorded. The right to possession of the property vested in the defendants ten days thereafter. ORS 93.930. The plaintiff filed his Chapter 11 bankruptcy petition on June 28, 1993.

### II. Land Sale Contracts in Oregon

▆▆ When a vendor sells Oregon real estate under a land sale contract she retains legal title until the contract is paid. She then must execute a deed to the vendee. During the contract period the vendee has possession of the property and is generally obligated to pay all taxes, make repairs and maintain casualty insurance on the property.

Three default remedies commonly used in Oregon and other states upon default under a land sale contract are forfeiture, strict foreclosure, and a suit in equity for specific performance for the contract price.[1] The first two remedies must be included in the contract to be available to the vendor. The third remedy is available in all circumstances.

With strict foreclosure a court orders the vendee to pay the amount due on the contract within a period set by the court.[2] If the vendee is unable to pay the amount due the court confirms the vendor's title to the land and orders possession of the property to her. The vendee's interest in the property is terminated and past installment payments made are forfeited. Alternatively, the court may use its discretionary power to order a foreclosure sale.

In a suit for specific performance the court orders the vendee to pay the amount due on the contract which, as with strict foreclosure, may be the accelerated balance due under the contract. The court orders a foreclosure sale if the vendee cannot pay in the time allotted by the court.

After any court-ordered sale under either strict foreclosure or specific performance the vendor is entitled to a judgment against the vendee for any unpaid balance still due on the contract. The vendee or a junior lienholder may have a statutory right of redemption of the property after the judicial foreclosure sale.[3]

A third default remedy available to a vendor is that of forfeiture. When the vendor elects this remedy she declares the contract terminated and retains the vendee's prior payments as liquidated damages. ORS 93.930(2)(b). She must comply with strict default notice requirements. The notice of default and an affidavit of service must be recorded. ORS 93.915. The number of days the vendee has to cure the default depends on the amount of equity he has in the contract. In Oregon this period runs from 60 to 120 days. ORS 93.915(3). If the default consists of nonpayment of installments due it may be cured by paying all past-due installments. If the vendee cures the default within the prescribed time the parties continue under the original contract as if no default had occurred. The property interest of any person claiming through the vendee is unaffected by any of the vendor's acts on default unless he receives notice. He also may cure the default. ORS 93.940. After expiration of the cure period without cure the vendor must record a declaration of forfeiture in the county where the property is located. This declaration is deemed conclusive as to the forfeiture of all the vendee's interest in the property as to any purchaser for value in good faith relying upon it. ORS 93.930. If the value of the forfeited property does not fully reimburse the vendor for any unpaid contract balance she may not obtain a deficiency judgment from the vendee. ORS 93.935.

### III. Section 548

11 U.S.C. § 548 says in relevant part:

(a) The trustee may avoid any transfer of an interest of the debtor in property . . . that was made or incurred on or within one year before the date of the filing of the

---

1. Other less commonly used remedies available are rescission and an action at law for past due installments. *See generally*, Spencer, *Remedies Available Under a Land Sale Contract*, 3 Willamette L.J. 164 (1965).

2. If the contract provides for acceleration upon default, the vendee would be required to pay the remaining balance of the land sale contract. If the contract does not so provide, the vendee would be in default only for the missed installments.

3. A statutory right of redemption is a right given by statute to certain parties to redeem the prop-

erty *after* a foreclosure sale by paying the foreclosure sales price to the purchaser plus, in some instances, certain other amounts (e.g. the costs of the sale). The Oregon Court of Appeals has held that there is no statutory right of redemption after a judicial sale ordered pursuant to a proceeding for specific performance of a land sale contract. *EMCO Investment, Inc. v. Vaden*, 60 Or.App. 762, 655 P.2d 220 (1982); *Cooley v. Powers*, 80 Or.App. 591, 723 P.2d 348 (1986). Alternatively, the Supreme Court has held that there is a statutory right of redemption from a strict foreclosure sale. *Land Associates, Inc. v. Becker*, 294 Or. 308, 656 P.2d 927 (1982).

petition, if the debtor voluntarily or involuntarily—

. . . . .

(2)(A) received less than a reasonably equivalent value in exchange for such transfer . . .; and

(B)(i) was insolvent on the date that such transfer was made . . ., or became insolvent as a result of such transfer . . .;[4]

■ In order for the debtor under our facts to prevail at trial under § 548(a)(2) he must establish the following elements:

1) that the debtor had an interest in property;

2) that a transfer of that interest occurred within one year of the filing of the bankruptcy petition;

3) that the debtor was insolvent at the time of the transfer or became insolvent as a result thereof; and

4) that the debtor received "less than a reasonably equivalent value in exchange for such transfer." *BFP*, —— U.S. at ——, 114 S.Ct. at 1760 (citing 11 U.S.C. § 548(a)(2)).

The debtor argues that the forfeiture of his interest in the property is avoidable because the monetary benefit he received, cancellation of the unpaid balance of the Scarbrough/Grassmueck contract, was not the reasonably equivalent value of his forfeited interest in the property as measured by the property's fair market value.

## IV. *BFP v. Resolution Trust Corporation*

■ The *BFP* Court rejected the proposition that "reasonably equivalent value" is the equivalent of fair market value.[5] It held, rather, that "reasonably equivalent value" for property foreclosed upon "is the price in fact received at the foreclosure sale, so long as all the requirements of the State's foreclosure law have been complied with." *BFP*, —— U.S. at ——, 114 S.Ct. at 1765. The Court stated that its holding was limited to "mortgage foreclosures" of real estate.[6] However, the analysis upon which the Court rests its holding has equal relevance within the context of forfeitures of Oregon land sale contracts.

The Court majority denied that "reasonably equivalent value" is an unambiguous term. While agreeing that its use requires the court to examine the relationship between any value received by the debtor and the "worth" of the property transferred, it concluded that the term gives no directive on the method for measuring that "worth." *BFP* at ——, 114 S.Ct. at 1765. After examining two methods of measurement, fair market value and a reasonable forced sale price, it rejected both.

The Court pointed out that while other sections of the Bankruptcy Code use the term "fair market value", the drafters seem almost consciously to have avoided using it in § 548. *BFP* at ——, 114 S.Ct. at 1761. "[I]t is generally presumed that Congress acts intentionally and purposely when it includes particular language in one section of a stat-

4. "Transfer" is defined under the Bankruptcy Code as "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption." 11 U.S.C. § 101(54). The last phrase was added in 1984 clarifying that foreclosure sales fall within this definition. Although forfeiture of an interest under a land sale contract is not specifically mentioned, this definition is broad enough, and, particularly in light of the 1984 clarification, should be interpreted, to include such forfeiture. "Value" is defined to include the satisfaction of a debt. 11 U.S.C. § 548(d)(2)(A).

5. Fair market value is defined as "[t]he amount at which property would change hands between

a willing buyer and a willing seller, neither being under any compulsion to buy or sell and both having reasonable knowledge of the relevant facts." BLACK'S LAW DICTIONARY 537 (5th ed. 1979).

6. *BFP*, —— U.S. at ——, 114 S.Ct. at 1761 n. 3. While the Court limited its holding to "mortgage foreclosures," it must also cover trust deed foreclosures as BFP took the property subject to a deed of trust. The *BFP* holding has recently been extended to tax foreclosure sales. *See, McGrath v. Simon*, 170 B.R. 78 (Bankr.D.N.J. 1994); *T.F. Stone Companies, Inc. v. Harper*, 170 B.R. 884 (Bankr.N.D.Tex.1994). *But see, Butler v. Lejcar*, 171 B.R. 321, 326 n. 6 (Bankr.N.D.Ill. 1994) (in dicta stating "the rationale applied in *BFP* may not be applicable with respect to tax sales in Illinois").

ute but omits it in another." *Id.* (citation omitted). Further, "fair market value presumes market conditions that, by definition, do not obtain in the forced-sale context, since property sold within the time and manner strictures of state-prescribed foreclosure is simply worth less than property sold without such restrictions." *BFP* at ——, 114 S.Ct. at 1761.

▇ Nor is "reasonably equivalent value" to be equated with some federally defined "reasonable" forced-sale price. "To specify a federal 'reasonable' foreclosure-sale price is to extend federal bankruptcy law well beyond the traditional field of fraudulent transfers, into realms of policy where it has not ventured before." *BFP* at ——, 114 S.Ct. at 1763. Historically the states have established both the law of fraudulent transfers and foreclosures. Congress must provide "clearer textual guidance than simply the phrase 'reasonably equivalent value'" if the Bankruptcy Code is to be interpreted to invade traditional state interest in the security of titles to real estate. *BFP* at ——, 114 S.Ct. at 1764.

### V. Application of BFP to Oregon Land Sale Contract Forfeitures

▇ Upon receipt of a notice of default under an Oregon land sale contract the vendee may market his interest in the property for a limited period of time. As with property sold through foreclosure, due to time and procedural constraints this interest is then worth less than fair market value.

States traditionally have not only prescribed the law of fraudulent transfers and foreclosures but also have fashioned the procedures governing sale and forfeiture of real estate under land sale contracts. There is common and widespread use of land sale contracts in Oregon. Securing real estate titles obtained through this method of conveyance is in Oregon's basic interest. Invasion of this interest by applying some standard which represents a "reasonable" or "fair" price for any forfeited real estate interest is also unjustified.

This court believes that its holding has particular cogency when applied in those states, such as Oregon, whose legislatures and courts have taken steps to assure that a proper balance be struck between the rights of the vendor and vendee under land sale contracts. Prior to 1985 Oregon courts held that vendees under land sale contracts had certain rights similar to those accorded mortgagors. In 1979 the Oregon Supreme Court held that a declaration of forfeiture under the terms of a contract providing the vendor with alternative remedies is effective only if the vendor first gives the vendee notice and a reasonable redemption period. *See, Elsasser v. Wilcox,* 286 Or. 775, 781, 596 P.2d 974, 976 (1979). The Oregon Court of Appeals recognized in 1981 that the land sale contract is something more than a simple contract, calling it "primarily a security device." *Braunstein v. Trotter,* 54 Or.App. 687, 691, 635 P.2d 1379, 1381 (1981). "The vendor under the contract is said to have a vendor's lien on the property." *Id.*

When the Oregon legislature acted in 1985 to codify the rules governing contract forfeitures it balanced the rights of the vendor and vendee by requiring that the vendee and others holding an interest through him be given notice and an opportunity to cure the default and by eliminating the possibility of a deficiency judgment while giving protection from procedural defects to the vendor's bona fide purchaser for value and cutting off the vendee's rights in the property at the date of forfeiture.

▇ Notice, reasonable opportunity to cure and strict adherence to statutory requirements are procedural protections afforded defaulting parties under mortgage and trust deed foreclosure proceedings. The Oregon forfeiture procedure also includes these protections. The land sale contract forfeiture statute, however, unlike the former procedures, does not mandate the property's sale. This court has concluded that if the forfeiture procedure has been regularly conducted pursuant to state law the analysis upon which the *BFP* holding is based applies with equal validity despite the absence of a sale as a mandated step toward elimination of the defaulting party's interest. During the cure period the vendee is free to sell his interest in the property if he must to protect

the equity he has acquired. Further, *BFP* emphatically directs that federal law, in the absence of specific statutory direction otherwise, be interpreted to support state laws in areas of their traditional province. Section 548(a)(2) is found to contain no such direction.

 Under current Oregon law a forced sale may be set aside where the amount paid for the property at the sale is so grossly inadequate as to shock the conscience of the court.[7] *BFP* recognized this as an exception to its holding.[8] The plaintiff here has not alleged unconscionability.

## VI. CONCLUSION

 Absent a debt so small as to shock the conscience, cancellation of the remaining debt on an Oregon land sale contract through a forfeiture procedure regularly conducted pursuant to state law is "reasonably equivalent value" for the debtor's interest in the property within the meaning of § 548(a)(2)(A). The defendants' motion for summary judgment is granted.

This Memorandum Opinion contains the court's findings of fact and conclusions of law and pursuant to Bankruptcy Rule 9014, which incorporates Bankruptcy Rule 7052, they will not be separately stated. An order consistent herewith will be entered.

---

**7.** *See, Thompson v. Thompson,* 233 Or. 262, 268, 378 P.2d 281, 284 (1963) (execution sale) (citing *Ahlstrom v. Lyon,* 169 Or. 629, 131 P.2d 219 (1942); *Nodine v. Richmond,* 48 Or. 527, 87 P. 775 (1906)). This court has found no Oregon cases addressing unconscionability within the context of land sale contract forfeitures. This equitable principal however, is equally applicable where the debt forgiveness is grossly inadequate in relation to the value of the property forfeited.

**8.** "When these [foreclosure] procedures have been followed ... it is 'black letter' law that mere inadequacy of the foreclosure sale price is no basis for setting the sale aside, though it may be set aside ... if the price is so low as to 'shock the conscience or raise a presumption of fraud or unfairness'." *BFP* —— U.S. at ——, 114 S.Ct. at 1763.