In re Gloria CARTER, Debtor.

Gloria CARTER, Plaintiff,

v.

H & B JEWELRY AND LOAN, Robert Myers, Defendants.

Bankruptcy No. 396–37267–ELP13.
Adversary No. 96–3736–ELP.

United States Bankruptcy Court,
D. Oregon.

June 16, 1997.

Magar E. Magar, Portland, OR, for Gloria Carter.

Alan M. Spinrad, Portland, OR, for H & B Jewelry and Loan.

## MEMORANDUM OPINION

ELIZABETH L. PERRIS, Bankruptcy Judge.

Debtor brings this action to set aside a forfeiture of jewelry to defendant pawnbroker as a fraudulent transfer under 11 U.S.C. § 548 or as a preferential transfer under 11 U.S.C. § 547. H and B Jewelry and Loan ("defendant") moves for summary judgment on both claims. Debtor concedes that summary judgment should be entered on the preference claim. For the reasons expressed below, I will deny the motion with respect to the fraudulent transfer claim.

## FACTS

These facts are undisputed. On May 3, 1996, debtor pawned two women's rings at defendant's pawn shop, receiving $600 cash and a pawn ticket enabling her to redeem the pawn on timely payment of the $600 plus accrued interest. The payment was due on August 3, 1996. Debtor did not redeem the pawn by August 3. Pursuant to ORS 726.400, defendant sent a 30–day notice of forfeiture on August 16, 1996. Under the statute, debtor had 30 days in which to renew the loan for an additional three-month period on payment of a renewal fee and any accrued interest, or to pay the amount due and redeem the rings. Debtor did not renew or redeem in the allotted 30 days (September 16), and the rings were forfeited. ORS 726.400(3).

On September 23, 1996, debtor filed a Chapter 13 petition. She then filed this action to set aside the forfeiture under section 548.

## ISSUES

1. Does debtor have standing to bring this action to set aside a fraudulent transfer?

2. Did debtor receive reasonably equivalent value as a matter of law when her personal property was forfeited to a pawnbroker?

3. Was debtor solvent on the date of the transfer?

## DISCUSSION

### 1. *Standing*

Defendant argues that debtor does not have standing to bring this action. Section 548 provides that the trustee may avoid a fraudulent transfer of an interest of the debtor in property. The statute does not give the debtor the right to bring such an action herself. However, section 522(h) gives debtors the right to pursue avoidance actions under certain circumstances. *In re Bloom*, 28 B.R. 571 (Bankr.D.Or.1983). Section 522(h) provides:

> "The debtor may avoid a transfer of property of the debtor or recover a setoff to the extent that the debtor could have exempted such property under subsection (g)(1) of this section if the trustee had avoided the transfer, if—

> "(1) such transfer is avoidable by the trustee under section * * * 548 * * * of this title * * *; and

> "(2) the trustee does not attempt to avoid such transfer."

Section 522(g) gives the debtor the right to exempt property that the trustee recovers under section 550 (allowing the trustee to recover property that was fraudulently transferred), if the transfer was "not a voluntary transfer of such property by the debtor," and the debtor did not conceal the property.

In order for the debtor to have standing to avoid a fraudulent transfer, therefore, the debtor must meet five conditions: "(1) the transfer cannot have been a voluntary transfer of property by the debtor; (2) the debtor cannot have concealed the property; (3) the trustee cannot have attempted to avoid the transfer; (4) the debtor must exercise an avoidance power usually used by the trustee that is listed within § 522(h); and (5) the transferred property must be of the kind

that the debtor would have been able to exempt from the estate if the trustee (as opposed to the debtor) had avoided the transfer pursuant to one of the statutory provisions in section 522(g)." *In re DeMarah,* 62 F.3d 1248, 1250 (9th Cir.1995).

■ Defendant challenges only the first requirement, arguing that debtor cannot pursue this action because debtor's transfer of property was voluntary. It asserts that the transfer occurred when debtor voluntarily pawned the rings in May, and not when the rings were forfeited in September. Relying on *In re Madrid,* 725 F.2d 1197 (9th Cir.), *cert. denied,* 469 U.S. 833, 105 S.Ct. 125, 83 L.Ed.2d 66 (1984), defendant first argues that a pawn forfeiture is not a transfer in the same way that a lien foreclosure is not a transfer. Defendant's reliance on *Madrid* is misplaced. After the Ninth Circuit decided in *Madrid* that a lien foreclosure was not a transfer, Congress amended the definition of "transfer" to include both voluntary and involuntary transfers, and to include "foreclosure of the debtor's right of redemption." Section 101(54) now defines "transfer" as

> "every mode, direct or indirect, absolute or conditional, voluntary or involuntary, of disposing of or parting with property or with an interest in property, including retention of title as a security interest and foreclosure of the debtor's equity of redemption."

A debtor's right to redeem personal property from a pawnbroker fits within the statutory definition of transfer, because the loss of that right to redeem is analogous to a foreclosure of the debtor's equity of redemption.

Defendant next argues that, under section 548, the transfer occurred when debtor voluntarily gave up possession in return for the loan. Section 548 provides:

> "For purposes of this section, a transfer is made when such transfer is so perfected that a bona fide purchaser from the debtor against whom applicable law permits such transfer to be perfected cannot acquire an interest in the property transferred that is superior to the interest in such property of the transferee * * *."

11 U.S.C. § 548(d)(1). That statute determines when the transfer occurs, not whether there was a transfer.

■ In this case, there were two transfers: the first when debtor pawned the rings and the second when she lost the right to redeem them by failing to pay the amount due. *See* 2 *Collier on Bankruptcy* 101.54[1] (15th ed. Rev.1997) (foreclosure of the equity of redemption is a separate transfer from the initial transfer of the mortgage lien). There can be no dispute that the second transfer occurred in September 1996. It is the second transfer that debtor seeks to avoid. Because that transfer was not voluntary, debtor has standing to pursue this claim.

### 2. *Fraudulent transfer*

■ Debtor may avoid the forfeiture of her personal property if she can show that (1) she had an interest in property; (2) there was a transfer of that interest in property within one year of the filing of the bankruptcy petition; (3) she was insolvent at the time of the transfer or became insolvent as a result of it; and (4) she received less than reasonably equivalent value in exchange for the transfer. 11 U.S.C. § 548(a)(2)(A). The only two elements in dispute in this motion are whether defendant received less than reasonably equivalent value and whether debtor was insolvent on the date of the transfer.

#### A. *Reasonably equivalent value*

Defendant argues that the forfeiture of pawned property is reasonably equivalent value as a matter of law. Debtor argues that fair market value is the appropriate standard against which to judge reasonably equivalent value.

In *BFP v. Resolution Trust Corp.,* 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), the Supreme Court held that the price received on a noncollusive, regularly conducted foreclosure sale of real property constituted reasonably equivalent value under section 548. The Court first rejected the idea that "reasonably equivalent value" always means the same thing as either "fair market value" or "fair foreclosure price," and

then considered the states' essential interest in regulating real estate transactions. It concluded that, if state foreclosure procedures are followed in a noncollusive foreclosure sale, the price paid at the foreclosure sale will be conclusively presumed to be the reasonably equivalent value of the property in the forced sale.

The issue is whether the holding of *BFP* should apply in the context of the forfeiture of the right of redemption of personal property that has been pawned. Neither the parties nor I have found any cases applying *BFP* in the personal property context.

Decisions of courts that have considered whether *BFP* applies to land sale contract forfeitures are split. *Compare McCanna v. Burke,* 197 B.R. 333 (D.N.M.1996) (*BFP* applies to land sale contract forfeitures) *with In re Grady,* 202 B.R. 120 (Bankr.N.D.Iowa 1996). (*BFP* does not apply to land sale contract forfeitures.) In this district, the bankruptcy court has applied *BFP* to a forfeiture of real property under a land sale contract. In *In re Vermillion,* 176 B.R. 563 (Bankr.D.Or.1994), Judge Higdon held that cancellation of the remaining debt on an Oregon land sale contract through a forfeiture procedure regularly conducted pursuant to state law is reasonably equivalent value, unless the forfeiture could be set aside under state law. *Id.* at 570. The court reasoned that the Supreme Court rejected the idea that "reasonably equivalent value" was the same as "fair market value" or "reasonable forced sale value," but nonetheless recognized that the statutory language requires the court to examine the relationship between the value received by the debtor and the worth of the property transferred. *Id.* at 568. The difficulty, of course, is in determining the worth of property that is being disposed of through foreclosure or forfeiture. *Id.* Judge Higdon noted that the Supreme Court was concerned about federal intervention in the traditional state interest in the security of titles to real estate. *Id.* at 569.

Applying the reasoning of *BFP* to forfeiture of land sale contracts in Oregon, the court reviewed the statutory scheme governing forfeitures and considered the safeguards provided by the statutory procedures. *Id.* at 569. Judge Higdon concluded that forfeiture procedures were similar to foreclosure procedures, in that both required notice, a reasonable opportunity to cure, and strict adherence to statutory requirements. The main difference was that forfeiture procedures do not require a sale. The court concluded that

"if the forfeiture procedure has been regularly conducted pursuant to state law the analysis upon which the *BFP* holding is based applies with equal validity despite the absence of a sale as a mandated step toward elimination of the defaulting party's interest. During the cure period the vendee is free to sell his interest in the property if he must to protect the equity he has acquired."

*Id.* at 569–70. Because, under Oregon law, a forfeiture can be set aside if the amount paid for property at a forced sale is so grossly inadequate as to shock the conscience, the court held:

"Absent a debt so small as to shock the conscience, cancellation of the remaining debt on an Oregon land sale contract through a forfeiture procedure regularly conducted pursuant to state law is 'reasonably equivalent value' for the debtor's interest in the property within the meaning of § 548(a)(2)(A)."

*Id.* at 570.

I decline to hold that a debt satisfied through the forfeiture of pawned personal property is conclusively the reasonably equivalent value of the property forfeited. As I read *BFP,* three factors were critical to the Supreme Court's determination of the meaning of "reasonably equivalent value" in the context of mortgage foreclosure. First, the transfer at issue involved real property, which implicates the essential state interest in security of titles to real estate. The Court recognized the disruption that would occur if title to every piece of real property purchased at a foreclosure sale were to be under a federally created cloud. 511 U.S. at 544, 114 S.Ct. at 1764–65. Second, the transfer was accomplished according to a statutory foreclosure scheme in which the borrower was entitled to notice of default, a substantial lead time before foreclosure procedures were commenced, publication of a notice of sale,

and strict adherence to sale procedures. Under state law, if those procedures were strictly followed, a foreclosure sale could not be set aside merely for inadequacy of price. *Id.* at 542, 114 S.Ct. at 1763–64. Finally, the foreclosure involved a sale. The Court recognized that the value of real property sold in a forced sale is less than the value of property sold in an arms-length transaction. *Id.* at 539, 114 S.Ct. at 1762. The fact that there is a sale following public notice, however, provides some opportunity for the market to affect the price. Thus, the sale price on foreclosure is not necessarily limited to the amount of the outstanding debt.

In *Vermillion*, only two of the factors were present: the forfeiture involved real property, and there was a pervasive state statutory scheme governing forfeitures of land sale contracts. Judge Higdon concluded that the absence of a sale was not determinative, because "[d]uring the cure period the vendee is free to sell his interest in property if he must to protect the equity he has acquired." 176 B.R. at 569–70.

Of the three factors relied on by the Supreme Court in *BFP*, at most one is present in this case. There is no question that pawnbrokers are regulated under a pervasive state statutory scheme that provides some protections to borrowers and with which the pawnbrokers must strictly comply. When an item is pawned, the pawnbroker must deliver to the pledgor a memorandum or pawn ticket that contains specified information, including notice of the rights to redeem or renew the pawn. ORS 726.300. If the pawn is not redeemed during the specified loan period, the pawnbroker must give written notice to the pledgor of the forfeiture of the pledge, and must provide a 30–day grace period after delivery of the notice during which the pledgor may redeem the pledge or renew the loan. ORS 726.400(2). The statute does not require public notice of the proposed forfeiture.[1]

The mere fact that a transaction is governed by a comprehensive, even protective, statutory scheme is not sufficient by itself to take transfers made pursuant to that scheme outside bankruptcy fraudulent transfer law. The state's interest in the stability of personal property interests is not nearly so essential as the state's interest in the stability of real property titles. If a pawnbroker is required to turn over to the trustee the forfeited property or its value, the pawnbroker will simply not be permitted to retain the excess value that it might otherwise receive from the sale of a pawned item.

More importantly, where the transfer is not a sale but is a forfeiture, there is no assurance that the value of the forfeited property will bear any relationship to the worth of the personal property.[2] Undoubtedly, a pawnbroker will loan significantly less than what the pawned property would bring on resale, to cover the risks associated with such transactions. For example, in this case debtor testified in deposition that she has in the past pawned these same rings for anywhere from $300 to $600. There is evidence that the rings were worth $2,000. There is also evidence that, although $600 was the most defendant would loan debtor for the rings, she also could pawn the rings for a lesser amount, at her option. The extent of debtor's need at the time the rings were pawned does not relate to the value of the rings in any meaningful way.

I recognize that there is language in *BFP* that could be read to require a determination of reasonably equivalent value as a matter of law whenever property is transferred pursuant to a state regulatory scheme. The Court was careful not to read the Bankruptcy Code in a way that would infringe on traditional state regulation:

> that a borrower who cannot redeem pawned personal property will market his or her right to redeem. Unlike a borrower who is facing forfeiture of real property, a borrower who seeks to market a pawn ticket does not have possession of the pawned property and, therefore, does not have the item available for inspection by a potential purchaser.

1. In contrast, the statutes governing forfeiture of a vendee's interest in an Oregon land sale contract require that the vendor record notice of the pending forfeiture in the public real property records. ORS 93.915(4).

2. In *Vermillion,* Judge Higdon recognized that a borrower facing forfeiture of real property could market his or her interest in the property to protect any equity. It is not realistic to expect

"Absent a clear statutory requirement [in the Code] to the contrary, we must assume the validity of this state-law regulatory background and take due account of its effect.

" * * * * *

"To displace traditional state regulation in such a manner, the federal statutory purpose must be 'clear and manifest[.]' Otherwise, the Bankruptcy Code will be construed to adopt, rather than to displace, pre-existing state law."

511 U.S. at 539, 544–45, 114 S.Ct. at 1762, 1765 (citations omitted). The Court also noted, however, that "it is not state authority over debtor-creditor law *in general* that is at stake in this case, but the essential sovereign interest in the security and stability of title to land." 511 U.S. at 544 n. 8, 114 S.Ct. at 1765 n. 8.

The Court clearly left open the possibility that "reasonably equivalent value" would not be determinable as a matter of law in all situations involving comprehensive statutory schemes. 511 U.S. at 537 n. 3, 114 S.Ct. at 1761 n. 3. Where the implications of applying the Bankruptcy Code to transactions governed by state statutory schemes are not so far-reaching as in the area of real property mortgage foreclosures, different considerations come to bear. Application of fraudulent transfer law to forfeitures of pawned personal property would not disrupt "our national economic enterprise." Nor would it be so difficult to determine the "worth," or reasonably equivalent value, of pawned personal property.

I conclude that the existence of a state statutory scheme, without more, does not insulate a pawn forfeiture transaction completed in compliance with that law from the possibility that it may be set aside as a fraudulent transfer.

### B. *Insolvency*

Defendant argues that debtor was solvent as of the date of the transfer, which again it erroneously claims is May 1996. Defendant makes arguments based on debtor's schedules as well as her statements of value of the two pawned rings at issue. The evidence does not establish that debtor was solvent as of September 1996, when the transfer at issue occurred.

## CONCLUSION

Defendant is entitled to summary judgment on debtor's preference claim under section 547. Defendant is not entitled to summary judgment on the fraudulent transfer claim under section 548.