**In re Gloria CARTER, Debtor.**

**Gloria CARTER, Plaintiff,**

**v.**

**H & B JEWELRY & LOAN CO. and Robert Myers, Defendants.**

Bankruptcy No. 396–37267–elp13.

Adversary No. 96–3736–elp.

United States Bankruptcy Court, D. Oregon.

Sept. 5, 1997.

---

Magar E. Magar, Portland, OR, for debtor.

Alan M. Spinrad, Portland, OR, for H & B Jewelry & Loan.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ELIZABETH L. PERRIS, Bankruptcy Judge.

This matter came on for trial on August 27, 1997. Plaintiff debtor ("debtor") appeared with her attorney, Magar E. Magar. Defendant appeared through its attorneys Alan M. Spinrad and Richard C. Josephson. The trustee did not appear. The court having considered the testimony and evidence produced at trial and the argument of counsel, pursuant to Fed. R. Bankr.P. 7052, enters the following findings and conclusions.

## FINDINGS OF FACT

1. Debtor's complaint does not contain any allegations against defendant Robert Myers, who is the Chapter 13 trustee in this case.

2. On May 3, 1996, debtor pawned her diamond wedding set and ruby and diamond dinner ring with defendant, a licensed pawn broker, in exchange for a loan of $600 which, pursuant to the written pawn agreement memorialized in the pawn ticket, was to be repaid on or before August 3, 1996.

3. Debtor did not redeem or renew the pawn on or before August 3, 1996.

4. On August 16, 1996, defendant sent a notice required by state statute to debtor by certified mail that if the pawn was not renewed or redeemed within 30 days, debtor's interest in the rings would be forfeited.

5. Debtor received a notice in the mail from the post office that there was certified mail for her. She was aware that the certified mail was the notice sent by defendant regarding redeeming or renewing her loan.

6. Debtor did not pick up the certified letter from the post office, nor did she renew or redeem the pawn on or before September 16, 1996. Therefore, pursuant to ORS 726.400, debtor's interest in the rings was forfeited.

7. Debtor had in the past pawned items with defendant and timely redeemed them. She understood that if she did not timely redeem or renew the pawn she would forfeit her interest in the collateral.

8. Debtor filed a petition for relief under Chapter 13 of the Bankruptcy Code on September 23, 1996.

9. The fair market value of the rings at the time of forfeiture was $750. Debtor would have had to pay $690 to redeem the rings to prevent the forfeiture.

10. At the time of the forfeiture, debtor's liabilities exceeded her assets.

## CONCLUSIONS OF LAW

1. This is a core proceeding over which this court has jurisdiction. 28 U.S.C. § 157(b)(2).

2. No claims have been asserted against defendant Robert Myers. Judgment will be entered dismissing the complaint against defendant Myers.

3. Debtor had an interest in the diamond wedding set and the ruby and diamond dinner ring at the time they were forfeited.

4. There was a transfer of her interest in the rings when they were forfeited for debtor's failure to redeem or renew the pawn on or before September 16, 1996.

5. Debtor was insolvent at the time of the transfer.

6. Debtor received reasonably equivalent value for the transfer.

7. The transfer of the rings by forfeiture was not a fraudulent transfer under 11 U.S.C. § 548.

## DISCUSSION

Debtor seeks to set aside the forfeiture of jewelry that resulted from her failure to redeem or renew a pawn for which the jewelry was pledged. Debtor may avoid the forfeiture of the rings if she shows that (1) she had an interest in property; (2) there was a transfer of that interest in property within one year of the filing of the bankruptcy petition; (3) she was insolvent at the time of the transfer or became insolvent as a result of it; and (4) she received less than reasonably equivalent value in exchange for the transfer. 11 U.S.C. § 548(a)(2)(A).

There is no dispute that debtor had an interest in the jewelry at the time of forfeiture. The transfer occurred on the date of forfeiture, which was within one year of the date of the bankruptcy petition.

■ Defendant argues that debtor was not insolvent at the time of the transfer. "Insolvent" means "financial condition such that the sum of [an] entity's debts is greater than all of [an] entity's property, at a fair valua-

tion, exclusive of" property that may be exempted and property that has been fraudulently concealed or transferred. 11 U.S.C. § 101(32). Thus, debtor was insolvent if her liabilities exceeded her assets. *In re Sierra Steel, Inc.*, 96 B.R. 275, 277 (9th Cir. BAP 1989).

The only evidence presented on this issue was debtor's bankruptcy schedules, which show that, as of September 23, 1996, debtor had assets worth $188,320 (without deducting claimed exemptions) and liabilities of $194,-417. There is no evidence that debtor's financial condition changed in any material respect between September 16, 1996, the date of the forfeiture, and September 23, 1996, the date she filed bankruptcy. Thus, the evidence establishes that debtor was insolvent.

■ The primary dispute in this case is whether debtor received less than reasonably equivalent value for the transfer. On defendant's motion for summary judgment, I rejected defendant's argument that, based on *BFP v. Resolution Trust Corp.*, 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994), and *In re Vermillion*, 176 B.R. 563 (Bankr.D.Or. 1994), a forfeiture of pawned property in compliance with a state comprehensive statutory scheme constituted reasonably equivalent value as a matter of law. *In re Carter*, 209 B.R. 732 (Bankr.D.Or.1997). In its trial memorandum, defendant points out that *Vermillion* was affirmed by the district court in an unpublished written opinion,[1] and argues that the district court's opinion supports defendant's argument that reasonably equivalent value is established as a matter of law.

Had I been aware of the district court's opinion in *Vermillion*, it might or might not have affected my decision on summary judgment. The existence of an appellate decision implicates concerns of stare decisis in a way that a decision of another bankruptcy judge does not. In this case, however, the trial has been held. Because I conclude that, on the facts, the transfer was for reasonably equivalent value, a determination that a pawn forfeiture constitutes reasonably equivalent val-

---

1. Neither party cited the district court decision in connection with the motion for summary judg-

ment, and I was unaware of that decision until defendant cited it in its trial memorandum.

ue as a matter of law would have no effect on the outcome of this case. Therefore, I will not reconsider my summary judgment decision in this case. If the issue arises in another case, I will make my decision taking into consideration the district court opinion.

From the evidence presented at trial, I conclude that the fair market value of the pawned rings was $750. Debtor testified that the rings were worth $2,000. However, her opinion was based on her informal browsing at retail jewelry stores. Although debtor testified that she discounted the retail price to compensate for the fact that the rings were used, there is no evidence that the jewelry debtor priced in jewelry stores was comparable in quality to the rings she pawned or that the debtor had any knowledge or experience that would allow her to make a credible determination of what discount to apply.

Earl Oller, vice president of defendant, testified that the rings were worth between $750 and $1,300. He explained that there are three ways of disposing of jewelry that is pawned and then forfeited. Defendant can retail the jewelry itself, it can sell the jewelry to a wholesaler, or it can sell the parts separately. The value of used jewelry is affected by the quality of the stones, which includes considering the size, shape, color and clarity. Oller testified that the stones in the pawned rings were of poor quality. Based on their weight, color and clarity, he opined that he could sell the diamonds from the wedding set for $600 and the diamond from the dinner ring for $100—150. The gold and rubies are basically worthless to defendant in terms of resale. He also testified that he would be willing to sell the rings at retail for $750.[2] Based on his experience in the pawn brokering business, which includes assessing the value of jewelry in order to determine the amount to be loaned on a pledge of the jewelry, and his testimony that he would sell the rings for $750, I conclude that the fair market value of the rings is $750.

I also conclude that debtor received reasonably equivalent value when the rings were forfeited. By the time of the forfeiture, she would have had to pay $690 to redeem them. Thus, she received reasonably equivalent value when she forfeited her interest in the rings in return for releasing her from her obligation to repay the loan.

### CONCLUSION

Defendant Robert Myers is entitled to a judgment dismissing the complaint against him. Defendant H & B Jewelry is entitled to judgment in its favor on the fraudulent transfer claim. Mr. Spinrad should submit the judgment.

---

2. In my summary judgment opinion I commented that a pawnbroker would likely loan significantly less than what the pawned property would bring on resale, to cover the risks associated with such transactions. 209 B.R. at 736. In fact, the evidence at trial was that defendant would loan a relatively high percentage of what the pawned property would bring on resale if defendant knew that the pledgor had a good history of redeeming pawns.