**In re PRINCE GARDNER,**
**INCORPORATED,**
**Debtor.**

**E. Rebecca CASE, Chapter**
**7 Trustee, Plaintiff,**

**v.**

**TBAC–PRINCE GARDNER, INC. and**
**Tandy Brands Accessories, Inc.,**
**Defendants.**

**Bankruptcy No. 94–42129–172.**
**Adversary No. 96–4245–172.**

United States Bankruptcy Court,
E.D. Missouri,
Eastern Division.

April 8, 1998.

**64**

Howard S. Smotkin, Stone, Leyton & Gershman, Clayton, MO, for Plaintiff/Trustee.

David A. Lander, Thompson & Coburn, St. Louis, MO, for Defendants.

J. Talbot Sant, Jr., St. Louis, MO, for Debtor.

### ORDER

JAMES J. BARTA, Chief Judge.

The matter before the Court is the Motion for Summary Judgment, filed by Tandy Brands Accessories, Inc. ("Tandy Brands") and its subsidiary, TBAC–Prince Gardner, Inc. ("TBAC") (collectively "Defendants"), requesting a denial of the complaint to avoid and recover a transfer under 11 U.S.C. §§ 548 and 550 filed by the Plaintiff, E. Rebecca Case, Chapter 7 Trustee ("Trustee").

The Court has jurisdiction over this proceeding pursuant to 28 U.S.C. §§ 151, 157, and 1334, 11 U.S.C. §§ 105, 502, Rule 3007 of the Federal Rules of Bankruptcy Procedure, and Rule 9.01(b) of the Local Rules of the United States District Court for the Eastern District of Missouri. This proceeding is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(E).

A motion for summary judgment proceeds under Rule 56 of the Federal Rules of Civil Procedure ("Fed.R.Civ.P."), made applicable in Bankruptcy proceedings by Rule 7056, Federal Rules of Bankruptcy Procedure ("FRBP"). Summary judgment is appropriate when the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56. The moving party bears the burden to demonstrate that the record does not disclose a genuine dispute on a material fact, and to identify that part of the record which bears out that assertion. *City of Mt. Pleasant, Iowa v. Associated Elec. Co-op., Inc.,* 838 F.2d 268, 273 (8th Cir.1988). If the movant satisfies this burden of proof, the burden shifts to the non-movant to demonstrate the existence of material facts in dispute. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249, 106 S.Ct. 2505, 2510–11, 91 L.Ed.2d 202 (1986). The non-moving party "may not rest upon mere allegations or denials in the pleadings" but must respond by setting forth specific facts showing there is a genuine fact issue for trial. Fed.R.Civ.P. 56(e). The court must view the evidence presented in the light most favorable to the non-moving party and the non-moving party must be given the benefit of any inferences that can be reasonably drawn from those facts. *Matsushita Electric Ind. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986); *Alpine Elec. Co. v. Union Bank,* 979 F.2d 133, 135 (8th Cir.1992).

Summary judgment will be denied whenever the moving party fails to establish all the elements necessary to prevail or when the non-moving party presents a genuine issue of fact in dispute. Rule 56 requires that the Court deny summary judgment when the

moving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986). An issue of genuine fact exists and summary judgment must be denied if the court determines that there may be sufficient evidence presented at trial to allow a verdict in favor of the non-moving party. *Anderson,* 477 U.S. at 249, 106 S.Ct. at 2510–11.

The Debtor, Prince Gardner, Incorporated, had been engaged in the manufacture and sale of leather goods. Prior to the commencement of this case, LaSalle Business Credit, Inc. ("LaSalle"), the Debtor's secured lender, had received a security interest in substantially all of the assets of Prince Gardner by way of loan documents and security agreements. Signal Capital Corporation ("Signal"), a junior lien holder, was also secured by assets of the Debtor. In November 1993, the Debtor defaulted on the loan to LaSalle and failed to cure the default within a reasonable time. As a result of the default, the Debtor signed a Foreclosure Agreement and consented to the sale of the assets to TBAC by LaSalle. Signal also consented to the sale and released its security interest in the assets in exchange for a payment of 53% of its outstanding debt. The Defendants purchased the assets of the Debtor for $7,690,000.00. The Trustee has argued that the minimum value of the assets, and therefore the minimum amount for which they should have been sold, was $8,204,246.00, a difference of more than $500,000.00. A breakdown of the Trustee's valuation is as follows:

| (A) | Inventory | $3,796,459.00 |
| (B) | Trade Names | $2,000,000.00 |
| (C) | Customer Relations | $ 700,000.00 |
| (D) | A/R | $1,545,787.00 |
| (E) | Fixed Assets | $ 162,000.00 |
| | | $8,204,246.00 |

As a result of the difference between the valuation (based upon an appraisal and other information obtained from the Defendants) and the actual sale price, the Trustee has argued further that the Debtor received less than reasonably equivalent value in exchange for the pre-petition transfer of its assets.

Therefore, the Trustee has requested that the Court avoid the transfer under Section 548, and award judgment to her in the amount of at least $514,246.00 under Section 550.

The Trustee may avoid any transfer of an interest of a debtor made or incurred on or within one year before the date of filing the petition if the debtor voluntarily or involuntarily received less than a reasonably equivalent value in exchange for the transfer, and was either insolvent on the date that the transfer was made or became insolvent as a result of such transfer, was engaged in business, for which any property remaining with the debtor was an unreasonably small capital, or "intended to incur, or believed that the debtor would incur, debts that would be beyond the debtor's ability to pay as such debts matured." 11 U.S.C. § 548(a)(2).

■ The initial question here is whether or not a reasonably equivalent value is the price in fact received at a non-public, forced foreclosure sale of personal property, so long as all the requirements of the applicable State foreclosure laws have been satisfied. The Court has concluded that in a proceeding under Section 548 of the Bankruptcy Code, the price received from a sale of inventory, trade names, customer relationships, accounts receivable, and fixed assets under such circumstances does not conclusively establish reasonably equivalent value.

The Defendants have contended that the price received at a pre-petition sale of personal property that is in full compliance with the applicable State requirements is, by law, the reasonably equivalent value given in exchange for the transfer of the property. The law relied upon by the Defendants is an extension of the holding in *BFP v. Resolution Trust Corporation,* 511 U.S. 531, 114 S.Ct. 1757, 128 L.Ed.2d 556 (1994).

.... the consideration received at a noncollusive, regularly conducted real estate foreclosure sale constitutes a reasonably equivalent value under § 548(a)(2)(A).

*BFP,* 511 U.S. at 536, 114 S.Ct. at 1761.

If the *BFP* decision is controlling in a sale of personal property, as it is in a foreclosure sale of real property, the Defendants have

argued that the Trustee is then precluded from further litigation to avoid the transfer under Section 548(a)(2)(A). For the reasons explained below, the real property/personal property analogy must fail.

The Supreme Court in *BFP* was presented with a creditor's actions that included a pre-petition, properly noticed foreclosure sale of a debtor's real property. The facts in the matter being determined here describe a forced sale of the Debtor's personal property. In *BFP*, the Supreme Court carefully explained that its decision might have been different if the transfer did not involve fore-closure of real property.

> We emphasize that our opinion today covers only mortgage foreclosures of real estate. The considerations bearing upon other foreclosures and forced sales (to satisfy tax liens, for example) may be different.

*BFP*, 511 U.S. at 537, Fn. 3, 114 S.Ct. at 1761, Fn. 3.

> .... the "reasonably equivalent value" criterion will continue to have independent meaning (ordinarily a meaning similar to fair market value) outside the foreclosure context.

*BFP*, 511 U.S. at 545, 114 S.Ct. at 1765.

> ... bankruptcy "courts regularly make.... determinations about the 'reasonably equivalent value' of assets transferred through other means than foreclosure sales" ... [b]ut in the vast majority of those cases, they can refer to the traditional common-law notion of fair market value as the benchmark.

*BFP*, 511 U.S. at 547, 548, 114 S.Ct. at 1766.

The Supreme Court did not state that the reasonably equivalent value in exchange for a transfer other than a real estate foreclosure, such as a sale of personal property, could never be equal to the actual sale price. Rather, it limited its ruling to real estate foreclosure sales. The lower courts have responded by considering the Supreme Court directives on a case by case basis, examining the nature of the commodity that was transferred. For example, in Oregon and New Mexico, land sale contract forfeitures are subject to the holding in *BFP* that the sale price constitutes reasonably equivalent value. *See Vermillion v. Scarbrough*, 176 B.R. 563 (Bankr.D.Or.1994); *McCanna v. Burke*, 197 B.R. 333, 341 (D.N.M.1996). However, in at least one District in Iowa, *BFP* does not apply to land sale contract forfeitures. *In re Grady*, 202 B.R. 120, 126 (Bankr.N.D.Iowa 1996). A debt satisfied through the forfeiture of pawned personal property is not conclusively the reasonably equivalent value of the property forfeited (*BFP* does not apply). *In re Carter*, 209 B.R. 732 (Bankr.D.Or.1997).

The Court finds and concludes here that the holding in *BFP* does not apply to a non-public, forced foreclosure sale of inventory, trade names, customer relationships, accounts receivable and fixed assets. Arguably, these findings and conclusions should not be limited to the types of non-real property that were the subject of this sale, and should be extended to all personal property. However, to state that *BFP* applies *only* to real estate mortgage foreclosure sales, and does not apply to *any* personal property foreclosure sale is to exceed the scope of the issue submitted and briefed by the Parties in this matter. Therefore, upon a proper examination, it might be determined that the rationale in *BFP* requires that its holding be applied to cases involving for example, the sale of titled personal property, or the sale of equity security, or letters of credit or intellectual property rights.

■ Having determined that the holding in *BFP* does not, as a matter of law, equate the price received in these circumstances with the reasonably equivalent value required at Section 548(a)(2)(A), the Court must decide whether other grounds exist to grant summary judgment.

■ The Bankruptcy Court is directed to make inquiry into the relationship of the value received by a debtor to the worth of the property transferred. In the vast majority of asset transfers other than real estate foreclosure sales, the Bankruptcy Courts can determine worth and reasonably equivalent value by referring to the common-law notion of fair market value. *BFP*, 511 U.S. at 548, 114 S.Ct. at 1766. The Defendants have disagreed with the Trustee's argument as to

the fair market value of the property transferred, as well as having disagreed with the notion that the concept of fair market value should be part of this consideration. Therefore, the Court has determined that a genuine issue as to material fact exists concerning what constitutes "reasonably equivalent value" of the assets of this Debtor. This issue requires a determination of the relationship between the value received by the Debtor and the worth of the property transferred.

The Trustee has presented other issues that must be determined either by agreement of the Parties in view of these findings and conclusions, or upon a trial to the Court. The record indicates that the sale was not publicly advertised, and that the attempts to market the sale of the Debtor's company may have been less than what would have been anticipated in these circumstances. Therefore, the Trustee has argued that the sale was not commercially reasonable.

■ "Commercial reasonableness is a matter to be determined by state law." *In re Youngblood,* 167 B.R. 870, 874 (Bankr. W.D.Tenn.1994). Under Missouri law "a secured party after default may sell. . . any or all of the collateral. . ." so long as the sale is commercially reasonable. Mo. Ann. Stat. § 400.9–504(1) (1994). The relevant portion of the statute states:

. . . .

(3) Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable. Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market,. . .reasonable notification of the time after which any private sale. . .is to be made shall be sent by the secured party to the debtor. . .[N]otification shall be sent to any other secured party from whom the secured party has received (before sending his notification to the debtor) written notice of a claim of an interest in the collateral.

Mo. Ann. Stat. § 400.9–504(3) (1994).

According to the Parties' Foreclosure Agreement–Section 2.2, Prince Gardner received notice of the foreclosure sale from LaSalle, the secured party, or in the alternative, expressly waived such requirement. **Exhibit 1–B, Defendants' Motion, Document No. 12, filed December 11, 1996.** Written notice was also sent to those parties who had given written notice of a claim of interest in the assets of Prince Gardner.

■ Although Missouri law recognizes that a private sale may occur when the sale is not publicly advertised or marketed, the failure to advertise may be a factor in determining commercial reasonableness or reasonably equivalent value. " '[T]he fact that a better price could have been obtained by a sale at a different time or in a different method from that selected by the secured party is not of itself sufficient to establish that the sale was not made in a commercially reasonable manner.' " *Jefferson Bank & Trust Company v. Horst,* 599 S.W.2d 201, 204 (Mo.Ct.App.1980), quoting Rev. Mo. Stat. §§ 400.9–507(2), (1978). The Court further finds and concludes that there is a genuine issue as to a material fact concerning the commercial reasonableness of the sale.

A third significant issue raised by the Trustee concerns the suggestion of collusion that appears from the unadorned circumstances of the sale. The only statement offered by the Defendants in response to this issue is that, "There is no evidence of collusion between Prince Gardner, LaSalle, Signal, and TBAC." Defendants' Brief at 12, *In re Prince Gardner, Inc.* (Adv. No. 96–4245). The facts, however, show that Signal provided a blanket release to everyone connected with Prince Gardner, including any potential guarantors, despite the fact that the sale resulted in a deficiency of almost $2,000,-000.00. In addition, the transaction was accomplished in four days. These facts raise questions about whether or not any fiduciary responsibilities owed to the Debtor were fulfilled by the responsible parties and by the terms of the Foreclosure Agreement. The unresolved question of the liquidated value of the benefits received by the Debtor in this

transaction is a genuine issue of material fact that may be substantially affected by any improper collusion that may be established by the Trustee.

As a result of the foregoing determinations, the Court finds and concludes that the Defendants have not established that there is no genuine issue as to any material fact, and that they are entitled to judgment as a matter of law.

■ Although not necessary to the determination in this pretrial matter, it may be helpful to the Parties to briefly address the Defendants' arguments set out in their reply brief. The Defendants have cited five cases in support of their position that, even if the Trustee's values are accepted in this matter, the amount paid for the assets is approximately 94% of the assets' worth. Other courts have found that smaller percentages satisfied the reasonably equivalent value requirement. However, the cases cited are not binding in this determination. Each case involved a non-collusive sale of real property, which if decided after *BFP* would have conclusively established the reasonably equivalent value. Each case referred to the foreclosure price in terms of a percentage of a usually higher fair market value. Expressed in actual dollar terms however, the results are as follows:

*In re Gantz,* 162 B.R. 890 (D.Wyo.1994). The difference between the price paid and fair market value was less than $15,000.00.

*In re Brasby,* 109 B.R. 113 (Bankr.E.D.Pa. 1990). The difference between the price paid and the claimed fair market value was less than $15,000.00.

*In re Kjeldahl,* 52 B.R. 926 (Bankr.D.Minn. 1985). The difference between the price paid and the fair market value was approximately $10,000.00.

*In re Lower Downtown Associates, L.P. [v. Brazosbanc Savings Ass'n of Texas],* 52 B.R. 662 (Bankr.D.Colo.1985). The difference between the price paid and the fair market value plus the court determined estimated costs of resale and interest was zero.

*In re Thompson,* 18 B.R. 67 (Bankr. E.D.Tenn.1982). The difference between the price paid and the fair market value was less than $13,000.00.

In the matter being considered here, the assets transferred were personal property, not real estate. If the Trustee's opinion as to the fair market value is correct, the difference between the worth of the assets and the value received by the Debtor may be greater than $500,000.00. Although the price paid may be within the percent range that has been found to be acceptable in sales of real property, the potential value of the amount recoverable here requires that the Trustee act in the best interests of the estate.

Finally, the Defendants' argument that the Trustee's evidence is based on artificial book value supports the determination here that a genuine issue as to a material fact exists in this matter. The Debtor's records may in fact be credible evidence of value.

**IT IS ORDERED** that the Defendants' Motion for Summary Judgment is denied; and

That this matter is continued and reset to *June 9, 1998 at 10:00 a.m. in Bankruptcy Court No. 1, One Metropolitan Square, 211 North Broadway, 7th Floor, St. Louis, Missouri* as a continued pretrial hearing; and that the Parties are to meet and attempt to resolve the remaining disputed issues in light of the determinations set out in this Order.